**ORAL ARGUMENT NOT YET SCHEDULED**

No. 13-7156

_____

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

RANDY BROWN,
*Plaintiff-Appellant*

v.

WHOLE FOODS MARKET GROUP, INC.,
*Defendant-Appellee*

_____

On Appeal from the United States District Court
for the District of Columbia (Judge James E. Boasberg)

_____

**BRIEF OF COURT-APPOINTED *AMICUS CURIAE***
**ON BEHALF OF APPELLANT**

Anthony F. Shelley
  *Counsel of Record*
Andrew D. Herman
Miller & Chevalier Chartered
655 Fifteenth St., NW, Suite 900
Washington, DC 20005
Telephone: (202) 626-5924
Facsimile: (202) 626-5801
Email:  ashelley@milchev.com
    aherman@milchev.com
*Court-Appointed Amicus Curiae*

July 8, 2014

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## LIST OF PARTIES AND *AMICUS CURIAE*

Appellant is Randy Brown.  Appellee is Whole Foods Market Group, Inc.
The *amicus curiae* in support of Appellant is Court-appointed counsel, Anthony F.
Shelley of Miller & Chevalier Chartered.

## RULINGS UNDER REVIEW

The United States District Court for the District of Columbia granted
Appellant's motion to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(1) and
12(b)(6) on September 4, 2013.  *See Brown v. Whole Foods Market Group, Inc.,*
965 F. Supp. 2d 132 (D.D.C. 2013) (included in the *amicus*'s Appendix
[hereinafter "AA"]).

## RELATED CASES

The *amicus* is not aware of any cases in this Circuit or elsewhere in which
Appellant has sought the same appellate relief.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND
RELATED CASES ...................................................................................C-1

LIST OF PARTIES AND *AMICUS CURIAE* ........................................C-1

RULINGS UNDER REVIEW ...................................................................C-1

RELATED CASES ....................................................................................C-1

INTEREST OF THE *AMICUS CURIAE* ..................................................1

JURISDICTIONAL STATEMENT ..............................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .........................2

RELEVANT STATUTES AND REGULATIONS.........................................2

STATEMENT OF THE CASE......................................................................2

      A.   The Allegations in the Complaints ...........................................3

      B.   District Court Proceedings......................................................11

      C.   Appellate Court Proceedings ..................................................14

STATEMENT OF FACTS .........................................................................14

SUMMARY OF ARGUMENT ..................................................................16

ARGUMENT ..............................................................................................19

I.     STANDARD OF REVIEW..............................................................19

II.    THE DISTRICT COURT ERRED IN GRANTING WHOLE
       FOODS' MOTION TO DISMISS BROWN'S ADA CLAIM ....................20

i

A.    Under the "Reasonable Accommodations" Theory on Which the District Court Focused, Brown Has Set Forth a Plausible Claim of Disability Discrimination ..................................................21

    1.    Brown Requested a Reasonable Modification ............................22

    2.    Whole Foods Failed to Make the Reasonable Modifications that Brown Requested ..................................................24

B.    Brown Has Also Stated a Valid ADA Claim on the Basis that Whole Foods Failed to Create and Enforce a Policy Requiring its Employees to Address Browns's Disability ..........................................25

III.  THE DISTRICT COURT ERRED IN GRANTING WHOLE FOODS' MOTION TO DISMISS BROWN'S CRA CLAIM......................29

A.    The District Court's Opinion Inaccurately Indicates that Brown Failed to Provide Notice to the District of Columbia............................31

B.    The District Court Mischaracterized the CRA's Notice Provision as Jurisdictional..........................................................................32

C.    Application of the Arbaugh Analysis to § 2000a-3(c) Establishes that the Notice Provision is Not Jurisdictional ......................................36

D.    In Lieu of An Appropriate Jurisdictional Analysis, The District Court Relied on Flawed Precedent ........................................39

E.    Because Providing Notice Is Not the Same as Filing a Complaint, Even If Brown Had Not Notified DCOHR Within the Statute of Limitations He Would Not Be Precluded from Proceeding.................40

F.    Because § 2000a-3(c) is a Claim-Processing Rule, Brown Should Not Be Barred From Pursuing His Civil Rights Claim .........................42

G.    Brown's Notification of the District of Columbia Shortly After Filing His Complaint Satisfies the Purpose of the Statute ...................44

H.    Under the District of Columbia Code, Notification is Strictly Pro Forma and Brown's Post-Filing Notice Caused No Prejudice to the District of Columbia or Whole Foods ............................................45

I.      Even if the Notice Requirement is Jurisdictional, or Otherwise
        Needed to be Followed Prior to the Filing of the Lawsuit, Brown
        Should Not Be Barred...................................................................50

CONCLUSION .........................................................................................52

Certificate of Compliance with Rule 32(a)..........................................*Post*

Certificate of Service ............................................................................*Post*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*District of Columbia ex rel. Am. Combustion, Inc. v. Transmerica Ins.*
 *Co.*, 797 F.2d 1041 (D.C. Cir. 1986) ...................................................................50

*\*Arbaugh v. Y & H Corp.*,
 546 U.S. 500 (2006)...................................................... 32, 33, 35, 36, 39, 40

*Atherton v. D.C. Office of the Mayor*,
 567 F.3d 672 (D.C. Cir. 2009) ..............................................................19

*Benoit v. U.S. Dep't of Agric.*,
 608 F.3d 17 (D.C. Cir. 2010) ...............................................................19

*Bilello v. Kum & Go, LLC*,
 374 F.3d 656 (8th Cir. 2004) ................................................................40

*Boykin v. KeyCorp*,
 521 F.3d 202 (2d Cir. 2008) .................................................................19

*Brown v. District of Columbia*,
 514 F.3d 1279 (D.C. Cir. 2008)............................................................. 3

*Burkhart v. Asean Shopping Ctr., Inc.*,
 55 F. Supp. 2d 1013 (D. Ariz. 1999) .................................................44

*\*Camarillo v. Carrols Corp.*,
 518 F.3d 153 (2d Cir. 2008) ............................................ 17, 24, 26, 27, 28, 29

*\*Daigle v. Friendly Ice Cream Corp.*,
 957 F. Supp. 8 (D.N.H. 1997)...............................................41, 51, 52

*Daniel v. Paul*,
 395 U.S. 298 (1969)..............................................................................38

*Dudley v. Hannaford Bros. Co.*,
 333 F.3d 299 (1st Cir. 2003)................................................................22

*Emery v. Pennies*,
  No. CV54007277, 2005 Conn. Super. LEXIS 3157 (Conn. Super.
  Ct. Nov. 2, 2005) ............................................................................44

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) ...................................................23, 24

*Harris v. Ericson*,
  457 F.2d 765 (10th Cir. 1972) ................................................32, 39, 40

*Henderson v. Shinseki*,
  131 S. Ct. 1197 (2011)........................................ 34, 35, 36, 37, 38, 39

*Hill v. Shell Oil Co.*,
  78 F. Supp. 2d 764 (E.D. Ill. 1999) .......................................41, 42, 45

*Hollis v. Rosa Mexicano DC, LLC*,
  582 F. Supp. 2d 22 (D.D.C. 2008)..........................................32, 39, 40

*INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*,
  502 U.S. 183 (1991)......................................................................35, 37

*Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.*,
  209 F.3d 18 (1st Cir. 2000)..................................................................52

*John R. Sand & Gravel Co. v. United States*,
  552 U.S. 130 (2008)..............................................................................42

*Johnson v. Gambrinus Co./Spoetzl Brewery*,
  116 F.3d 1052 (5th Cir. 1997) .............................................................22

*Lindsey v. United States*,
  448 F. Supp. 2d 37 (D.D.C. 2006)......................................................19

*Love v. Pullman Co.*,
  404 U.S. 522 (1972)..............................................................................44

*Martin v. Taft*,
  222 F. Supp. 2d 940 (S.D. Ohio 2002) ...............................................23

*Martinez v. Hooper*,
  148 F.3d 856 (7th Cir. 1998) ...............................................................23

v

*McEachin v. McGuinnis*,
   357 F.3d 197 (2d Cir. 2004) ............................................................23

*Menominee Indian Tribe of Wis. v. United States*,
   614 F.3d 519 (D.C. Cir. 2010) ........................................................42

*Pegram v. Herdrich*,
   530 U.S. 211 (1998) .................................................................3, 19

*Phoenix Consulting, Inc. v. Republic of Angola*,
   216 F.3d 36 (D.C. Cir. 2000) ..........................................................50

*Prakash v. Am. Univ.*,
   727 F.2d 1174 (D.C. Cir. 1984) .......................................................51

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010) ....................................................................34

*Richardson v. United States*,
   193 F.3d 545 (D.C. Cir. 1999) .........................................................19

*\*Schuler v. Pricewaterhousecoopers, LLP*,
   514 F.3d 1365 (D.C. Cir. 2008) ....................................43, 44, 48, 49

*Shinseki v. Sanders*,
   556 U.S. 396 (2009) ....................................................................36

*Sibelius v. Auburn Reg'l Med. Ctr.*,
   133 S. Ct. 817 (2013) ...................................................................34

*Smith v. Midland Brake, Inc.*,
   180 F.3d 1154 (10th Cir. 1999) ................................................22, 23

*Smith v. Scalia*,
   No. 13-CV-0298, 2014 U.S. Dist. LEXIS 71506
   (D.D.C. May 26, 2014) .................................................................23

*Stan v. Wal-Mart Stores, Inc.*,
   111 F. Supp. 2d 119 (N.D.N.Y. 2000*)* ...................................26, 27, 28, 29

*Stearnes v. Baur's Opera House, Inc.*,
   3 F.3d 1142 (7th Cir. 1993) ...........................................................40

*Tcherepnin v. Knight*,
    389 U.S. 332 (1967)............................................................22

*Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen Gen.*
    *Comm. of Adjustment*,
    558 U.S. 67 (2009)........................................................35, 37

*United States v. Med. Soc'y of S.C.*,
    298 F. Supp. 145 (D.S.C. 1969) .......................................38

*United States v. Moore*,
    703 F.3d 562 (D.C. Cir. 2012)..........................................20

*United States v. Oregon*,
    366 U.S. 643 (1961)..........................................................36

*Velez-Villaran v. Carico Int'l, Inc.*,
    715 F. Supp. 2d 250 (D.P.R. 2010) ..................................52

**Statutes**

28 U.S.C. § 1291 ......................................................................2

28 U.S.C. § 1331 ......................................................................1

28 U.S.C. § 1653 ...............................................16, 30, 50, 51

29 U.S.C. § 633 ......................................................................48

38 U.S.C. § 7266 ...............................................................34, 37

Civil Rights Act of 1964,
    42 U.S.C. §§ 2000a *et seq*........................................1, 29
    42 U.S.C. § 2000a.......................................................13, 17, 29
    42 U.S.C. § 2000a-3............................17-19, 30-32, 36, 37, 39-42, 44-48, 51, 52
    42 U.S.C. § 2000a-6.............................................................37

Americans with Disabilities Act,
    42 U.S.C. §§ 12101 *et seq.* ........................................1, 11
    42 U.S.C. § 12182.............................12, 16, 20, 21, 24, 28

D.C. Code § 2-1403.04 .........................40, 46, 47, 48, 49, 52

**Other Authorities**

S. Rep. No. 88-872 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2355 .......................38

Fed. R. App. P. 28 ...........................................................................................1

*Authorities on which we chiefly rely are marked with an asterisk.

## INTEREST OF THE *AMICUS CURIAE*

The Court appointed Counsel to file an *amicus* brief in support of Appellant. Because the *amicus* is Court-appointed, this *amicus* brief contains the items required by Fed. R. App. P. 28(a) and the related Circuit Rule.  The *amicus* has also filed, in accordance with Fed. R. App. P. 28(f) and the related Circuit Rule as those apply to an appellant's brief, an addendum comprising the relevant portions of statutes at issue.  For the Court's convenience, the *amicus* additionally is submitting an Appendix (referenced as "AA") containing items from the District Court's record.

## JURISDICTIONAL STATEMENT

Appellant Randy Brown filed two complaints *pro se* alleging discrimination on the basis of disability and race in the United States District Court for the District of Columbia, which had jurisdiction pursuant to 28 U.S.C. § 1331.  Brown's first complaint (AA17-19), filed on February 8, 2013, alleged a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*  On April 16, 2013, Appellee Whole Foods Market Group, Inc. ("Whole Foods") filed a motion to dismiss the complaint.  AA20-27.  On June 17, 2013, while that motion was pending, Brown filed a second complaint (AA42-48) alleging claims under Title II of the Civil Rights Act of 1964 ("CRA"), 42 U.S.C. §§ 2000a *et seq*.

Upon the filing of Brown's second complaint, the District Court denied

Whole Foods' motion to dismiss without prejudice, enabling Whole Foods to file a second motion to dismiss responding to the allegations in both complaints, asserting that Brown had failed to state a claim under the ADA and that the District Court lacked jurisdiction over the CRA claim.  AA3 (June 20, 2013 Minute Order); AA49-58.  On September 4, 2013, the District Court granted Whole Foods' motion to dismiss both of the complaints, finding that Brown had failed to state a claim under the ADA and that it lacked jurisdiction over the CRA claim.  AA5, AA6-16.

Brown timely appealed.  AA77.  This Court has granted Brown's motion to proceed on appeal *in forma pauperis*.  The Court has jurisdiction over Brown's appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Did the District Court err in dismissing Brown's claim asserting discrimination on the basis of disability under Title III of the ADA?

2.     Did the District Court err in dismissing Brown's claim asserting discrimination on the basis of race under Title II of the CRA?

## RELEVANT STATUTES AND REGULATIONS

Relevant portions of the ADA and CRA are set out in the Addendum immediately following this brief.

## STATEMENT OF THE CASE

This appeal presents significant legal issues concerning application of the federal disability and civil rights laws and the treatment of *pro se* plaintiffs in

federal court.  The Court must determine:  (1) if, based on the facts alleged in his

complaints, Brown stated a claim under the ADA; and (2) whether the District

Court was divested of jurisdiction over Brown's assumedly otherwise valid CRA

claim, due to his supposed non-compliance with a requirement in the CRA to

notify local authorities of his claim.  We begin by summarizing the allegations in

the complaint and Brown's other filings (read liberally in Brown's favor because

he is *pro se*, *see Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir.

2008)), and then turn to the District Court's order granting Whole Foods' motion

to dismiss.  The Court may properly consult Brown's filings other than the

complaints to establish the nature of his allegations.  *See Pegram v. Herdrich*, 530

U.S. 211, 230 n.10 (1998) (court may use appellant's brief to "clarify allegations in

her complaint whose meaning is unclear"); *see also infra* at p. 19 (noting courts'

obligations to consider whole record when determining validity of *pro se*

complaint).

## A.    The Allegations in the Complaints

Brown is an disabled African-American resident of Washington, D.C. who

has a cognitive disability caused by a traumatic brain injury. AA17 Both the

District of Columbia and the federal government legally recognize Brown as a

person with a disability for the purpose of the receipt of benefits such as Medicare

and Social Security.  AA32.  "Brown's disability was diagnosed at both the

Department of Neuropsychology at John's Hopkins University in Baltimore, Maryland and at the George Washington Medical Faculty Associates Department of Neurology in the District of Columbia." *Id.*  As a result of this diagnosis, Brown meets the eligibility requirements for client assistance services through the District of Columbia Department of Disability.  *Id.*

Brown exhibits socially abnormal behavior as a result of his disability.  *See id.*  He is susceptible to twitching and making abnormal facial expressions.  *Id.*  Brown also has a tendency to be indecisive and disorganized, which attracts attention.  *Id.*  When Brown is placed in stressful or complicated environments, he can experience mental confusion and disorientation, which may cause sudden incapacitation.  AA17-18.  Brown's disability makes him particularly vulnerable at grocery stores, where the arrangement and organization of stocked food can cause confusion.  AA17.  When Brown is confused, "he loses confidence and displays visible signs of social awkwardness."  *Id.*

During the period at issue in this matter, Brown often shopped at the Foggy Bottom Whole Foods grocery store; Whole Foods also "operates a fully functioning restaurant on its premises."  AA67.  On numerous occasions Whole Foods employees treated Brown inhumanely and differently than other patrons at the store.  AA17-18; AA42-44.  Brown alleges that this occurred because of his race and disability.  *Id*.

- 4 -

On one occasion, for instance, in the late summer of 2011, a cashier mocked Brown while he was checking out, telling him that his "food stamps" would be better utilized at a less expensive store. AA42. When Brown replied that he did not receive food stamps the cashier accused him of lying. *Id.* In a voice loud enough for other patrons to hear, the cashier told Mr. Brown, "I've seen you in here before using food stamps. I never forget a face. I know you been through here using your food stamps." *Id.* Brown contends that he was racially stereotyped and mistaken for another African-American shopper at the Whole Foods who has used food stamps at the store. AA43. After Brown reported the incident, store management reassigned the cashier to stocking shelves. AA42-43. In subsequent interactions, the reassigned cashier displayed open hostility to Brown. AA43.

Whole Foods employees also mistreated Brown on two separate occasions in early January of 2012. AA65. The first incident occurred in the Whole Foods deli section. *Id.* Ordinarily, Whole Foods allows deli customers to sample meat before deciding whether to make a purchase. AA43. Brown also observed that when customers receive samples, the deli employee places the meat on a napkin with a gloved hand. *Id.*; *see also* AA17-18. While in the deli, Brown requested a sample of finocchinoa salami, but the Whole Foods employee initially refused to provide Brown with a sample. AA43; *see also* AA17-18. Evidently assuming that Brown

could not afford the salami, which cost $30.00 per pound, the employee told Brown that samples were only provided to customers who intended to buy the meat.  AA43; AA17.  When Brown persisted, the deli employee removed her gloves and, with her bare fingers, attempted to shove a discarded slice of salami onto Brown's hand.  AA17-18.  When Brown refused to accept the sample, the deli employee chided Brown for "thinking that he was too good to eat something from her bare hands.  The employee then launched insults at Brown."  AA43.  The deli employee then left her workstation to speak with an employee in the adjoining wine department.  AA33.  The employees ridiculed Brown, calling him a "simple looking" and "trifling" person, who "should be grateful for anything he received."  *Id.*

A few days later, the same wine employee – apparently perceiving that Brown was consuming food without paying for it – confronted Brown while he was carrying groceries with his back toward the employee.  AA18.  The employee approached Brown from behind yelling, "Hey you!  Yo!  Hey!  You're not to eat anything in this store!"  AA33.  When Brown demonstrated that he was merely carrying groceries, the wine employee apologized, "awkwardly" explaining that "he was only 'concerned for Brown's health'" due to "'toxic dust in the store'" that might make him sick.  AA33-34.  Brown then asked a "wine department supervisor to recommend a Grenache that was similar to Brosao," a "Spanish wine that Brown

usually b[]ought at Whole Foods." AA34. The "employee stared at Brown [and] was reluctant to speak to Brown about wines." *Id.*

As a frequent shopper there, Brown avers that he has never observed white customers subjected to the "shocking level of disrespect" that he experienced while shopping at the Foggy Bottom Whole Foods. AA43-44. Accordingly, in mid-January of 2012, Brown met with the deli and wine employees' supervisor (identified in his pleadings as "Ashley") to complain about his mistreatment while shopping at the store. *See* AA34-35; AA65; AA44. Brown informed her that Whole Foods employees had subjected him to unequal and abusive treatment. AA35; AA65. Brown informed her of his cognitive disability and explained that it causes disorientation and confusion when he is placed in complicated or stressful situations. *Id.* Brown explained that his recent interactions with Whole Foods employees had created a stressful and complicated shopping experience, which exacerbated the symptoms of his disability. *Id.* Ashley apologized for Brown's mistreatment, stating, "You are a regular customer at our store. I've seen you shopping here several times a week. Returning to the store that frequently indicates that you are a good customer." AA35. Ashley promised that the employees responsible for his mistreatment would receive a written reprimand. AA34-35. She also told Brown that the actions of the employees violated Whole Foods' non-discrimination policy. AA35.

- 7 -

Brown also informed Ashley that he "usually did not require assistance but wanted to know that Whole Foods would accommodate him by allowing him to speak with management if a problem arose in the future." AA35. Ashley assured Brown that he could ask for a manager if any future harassment or mistreatment occurred. AA66. She also took notes of their conversation and indicated that it would be documented with the company. AA36.

On January 25, 2012, responding to her invitation to buy him dinner at the store, Brown met with Ashley again. AA35. Brown again informed her that he thought the symptoms associated with his disability – awkward mannerisms, indecision, and disorganization – contributed to the harassment he had experienced at Whole Foods. *Id.* "Brown asked that management understand his disability and discourage employees from profiling and targeting him." *Id.* Ashley again "took notes and promised that Whole Foods would take the matter seriously, stating that company policy required that Ashley document their conversations and complete the required paperwork." AA36.

Less than two weeks later, on February 4, 2012, a Whole Foods store manager (identified in the complaints as "Khalil") followed Brown, twice taking pictures of him as he shopped. AA44; AA65. At the time, Brown was "wearing a foot cast and using a cane prescribed by his treating physician following a bicycle accident." AA36. After taking pictures, Khalil would "hurry downstairs to where

the wine and deli departments are located" and consult with other Whole Foods

employees who had previously mistreated Brown.  AA44; AA36.  Moments later,

Khalil confronted Brown and advised him to "flee the store and never return in

order to avoid being arrested for theft."  AA44.  When Brown asked why the police

had been called, Khalil stated, "You stole a cookie."  AA37.  Brown then asked to

speak to the manager and Khalil responded by saying, "I am the manager."  *Id.*

"Brown felt bewildered by what appeared to be a cynical ploy to bar him

from the store," despite Ashley's assurances that "Whole Foods would

accommodate him by allowing him to speak with a manager."  AA37.  This

incident triggered a "panic reaction" associated with Brown's disability and he

"began to pace while talking to himself."  AA18.  He then started to shake, holding

onto a nearby information counter "while trying to regain focus."  AA37-38.

Brown's condition rendered him incapable of responding to Khalil.  AA18  After

Brown regained focus, the police arrived.  AA37-38.  Khalil told them "'[w]e don't

want this guy in our store.  He stole a package of cookies and walked through the

entire store eating them.'"  AA38.  The police arrested Brown for theft and

trespassing; Brown was arraigned on the trespass charges.  *Id.*; AA19.

In early March of 2012, Brown retained counsel to represent him in his

criminal matter.  AA72.  On June 28, the charges were dismissed for failure to

prosecute.  *Id.*  Subsequently, Brown's "lawyer expressed a desire to represent

plaintiff in a civil lawsuit [against Whole Foods] but warned Plaintiff to do nothing

with respect to legal matters related to his case without first receiving permission

from his lawyer." *Id.* Brown met with his counsel several times between June 28,

2012, and February 2, 2013, but his lawyer waited until "the eve before the statute

of limitations lapsed on February 4, 2013, before filing a one-page complaint that

omitted any information concerning discrimination." *Id.*[1]

Brown alleges that the failure to file a discrimination claim occurred because

his counsel provided him erroneous advice, including that: (1) Whole Foods is not

a place public of accommodation amenable to a civil rights statute; (2) that,

accordingly, Brown had trespassed; and (3) that Whole Foods could sue both

Brown and his counsel for "impugning" its reputation if they filed a civil rights

complaint against the store. AA75-76. Brown alleges that he "relied exclusively

upon his lawyer's judgment and advice . . . and upon discovering that his lawyer

had not properly advised him with respect to relevant civil rights matters, Plaintiff

immediately took steps in order to act on his own behalf." AA72. On February 8,

2013, Brown "rejected the advice of [his] lawyer and filed a civil rights complaint

against Whole Foods" in federal court. *Id.* Brown alleges that his "lawyer became

---

[1] Court records indicate that Brown's lawyer filed a complaint alleging false arrest
in District of Columbia Superior Court on January 31, 2013 (*Brown v. Whole
Foods Market, Inc.*, No. 2013 CA 000887 B (D.C. Super. Ct.; filed Jan. 31, 2013)).
AA29-30.

upset that [Brown] presumed to know the issues of his case sufficiently to question [Brown's] Lawyer's decision to omit information with respect to civil rights." AA72.  Brown fired his lawyer the following month.  AA73.

### B.     District Court Proceedings

As noted, on February 8, 2013, Brown, acting *pro se*, filed his first complaint in the United States District Court for the District of Columbia.  *See* AA17-19.  Brown alleged that Whole Foods had violated his rights under the ADA, 42 U.S.C. §§ 12101 *et seq.*  AA17.  Among his allegations, Brown averred that Whole Foods management knew of his disability and failed to provide him with reasonable accommodations that could have avoided the February 4, 2012, incident that ended with his arrest.  AA17-19.  In his response to Whole Foods' motion to dismiss his ADA claim, Brown requested injunctive relief barring further discrimination by Whole Foods.  AA39-41.

On June, 17, 2013, Brown filed a second complaint alleging a new claim under "Title III" of the CRA.  *See* AA45.  In a subsequent memorandum, filed on August 12, 2013, Brown clarified that he had intended to bring a claim under Title II of the CRA, which applies to private entities that are places of public accommodation.  *See* AA67; AA73. Brown's second complaint alleged that Whole Foods mistreated him on the basis of his race.  *See* AA42-48.  Specifically, Brown alleged that Whole Foods employees racially profiled and humiliated him.  *Id.*

Brown also argued that white customers were not subject to the type of mistreatment and disrespect that he endured while shopping at the Foggy Bottom Whole Foods.  AA43-44.  Brown sought injunctive relief for his CRA claims. AA47-48; AA40-41.

The District Court elected to "treat Brown's Amended Complaint as [a] supplemental to his first, thereby preserving his initial allegations under the ADA in addition to his new Civil Rights Act claims."  AA8-9.  The court also considered Whole Foods' separately-filed motions to dismiss the claims and a response and supplemental memorandum filed by Brown.  AA9.  The District Court's final decision, however, appears not to take notice of an additional response to Whole Foods' motions to dismiss, filed by Brown on August 12, 2013.  AA64-73.

Addressing Brown's ADA claim, the District Court assumed that "Brown is disabled and that Whole Foods is a public accommodation."  AA11.  The District Court then "presume[d]" that "Brown intends to allege discrimination consisting of 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such . . . accommodations.'"  *Id.* (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)).

- 12 -

As a factual matter, the District Court found that "Brown's only requested accommodation was that he 'receive help from a manager in order to prevent future problems' . . . [b]ut Brown never claims that he ever sought to make good on this request or that Whole Foods ever denied it."  AA11 (quoting Complaint at 2 [AA18]).

The District Court concluded that "[b]ecause Brown never alleges that Whole Foods fail[ed] to make reasonable modifications in [its] policies, practices, or procedures in order to accommodate his disability he has not alleged a violation of the ADA."  AA12.  (internal citation and internal quotation omitted).

Turning to Brown's CRA claim, the District Court endorsed Brown's position that, because it operates a fully functioning restaurant within the grocery store, the Foggy Bottom Whole Foods, is a "place of public accommodation" covered by Title II of the CRA.  AA12-13 (citing 42 U.S.C. §§ 2000a(b)(1)-(3), (4)(A)(ii)).  The District Court then considered Whole Foods' claim that Brown's failure to comply with the CRA notice provision – requiring prior notice of the action to local authorities – meant that the federal courts lacked jurisdiction over his complaint.  Concluding that the notice provision constituted a "mandatory jurisdictional prerequisite," the District Court held it had no jurisdiction to entertain Brown's Title II claim.  AA13-14.

The District Court next held that because the statute of limitations on filing a complaint with the appropriate local entity, the District of Columbia Office of Human Rights ("DCOHR"), had elapsed, it was "too late for Brown to cure the deficiency in his claim by filing such a notice." AA14. Finally, the District Court held that no exception tolled the "District's generally strict application of statutes of limitation." AA15.

### C.   Appellate Court Proceedings

On October 3, 2013, Brown filed an appeal of the District Court's order in this Court. AA78. On April 23, 2014, this Court denied motions for summary disposition, denied a motion for additional time to receive documents from DCOHR, and appointed the undersigned as *amicus* to present arguments in Brown's favor. AA78-79.

### STATEMENT OF FACTS

Most of the facts relevant to this appeal have been noted (with cites to the record) in the "Statement of the Case" and, in effect, consist of Brown's allegations and the factual support he has so far presented.

There is, however, one additional factual area that the *amicus* has explored with Brown that deserves mention. In light of the District Court's holding that Brown never provided notice and that the CRA's notification provision has jurisdictional effect, *amicus* stresses that Brown did notify the appropriate local

authority shortly after he filed his CRA claim in federal court; Brown also notified another, related local authority prior to filing his claim.

To address the former point, the *amicus* understands Brown to have provided notice to DCOHR 22 days after filing the second complaint in which he first raised his CRA claim. That is, the *amicus* understands that, on July 9, 2013, six days after Whole Foods filed its motion to dismiss Brown's amended complaint, Brown emailed Gustavo Velasquez, Director of DCOHR. Brown's email notified DCOHR, the local authority charged with receiving civil rights complaints, that he had filed a CRA complaint in federal court. He requested "a reasonable accommodation" from DCOHR in the "form of a waiver of both the filing requirement and a tolling of the statute of limitations" applicable under local law. AA61. On July 15, 2013, DCOHR General Counsel Alexis P. Taylor emailed a response to Brown, stating that DCOHR had "reviewed the docket . . . and ha[s] not found any matter that you have pending before this Office. Accordingly, there is nothing before the Office to act upon." AA62.[2]

As to notice prior to the filing of the lawsuit to other local authorities, the *amicus* understands that, prior to filing his federal CRA claims, Brown reported his

---

[2] The original July 9, 2013, email is not currently in the District Court's or this Court's record. However, the *amicus* presently will seek to lodge the document with the Court. The original email is verbatim quoted in DCOHR's July 15, 2013, email response, which *is* in the District Court record. *See* AA 62-64.

mistreatment by Whole Foods to Haydn Demas, ADA Specialist, Employment, with the District of Columbia Office of Disability Rights ("DCODR"). Brown never received resolution from DCODR.[3]

## SUMMARY OF ARGUMENT

A.      The Court should reverse the District Court's order granting Whole Foods' motion to dismiss Brown's ADA claim.  Brown, an African-American male who is disable, acting *pro se*, stated a claim that Whole Foods failed to make reasonable modifications of its policies and practices that were necessary to afford Brown access to the Whole Foods grocery store.  *See* 42 U.S.C. § 12182(b)(2)(A)(ii).  Brown requested injunctive relief pursuant to the ADA.

The District Court erred in finding that Brown failed to request reasonable modifications of Whole Foods' policies.  Brown twice met with a Whole Foods' supervisor, described the symptoms of his cognitive disability, and requested assistance from the store if difficulties arose in the store due to his disability. Despite Brown's efforts to communicate his needs, Whole Foods employees repeatedly harassed and mocked Brown.  Ultimately, an individual who identified

---

[3] The record here and in the District Court contains no references to Brown's exchange with DCODR.  But, insofar as his CRA claim was dismissed for lack of jurisdiction, Brown should if necessary be freely given the opportunity to supplement the record to delineate these facts, pursuant to 28 U.S.C. § 1653 ("[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts").

- 16 -

himself as a manager, summoned the police and had Brown arrested for trespassing.

Had Whole Foods satisfied its obligations to accommodate Mr. Brown, his arrest would never have occurred. Brown's pleadings establish a "reasonable modification" claim under the ADA and, on that basis, mandate reversal of the District Court's order dismissing the ADA complaint.

Brown also stated an ADA claim that Whole Foods failed to create and enforce a policy requiring its employees to address Brown's disability*, see Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008). Had Whole Foods implemented such a policy, especially in light of Brown's repeated efforts to communicate his needs, he would have received assistance when he requested to speak with a manager. Instead, the individual who identified himself to Brown as the manager summoned the police and had Brown arrested.

B.      The District Court erred in granting Whole Foods' motion to dismiss Brown's claim under Title II of the CRA. Brown alleged that Whole Foods discriminated against him on the basis of his race in violation of 42 U.S.C. § 2000a(a) and requested "preventative relief" pursuant to 42 U.S.C. § 2000a-3(c). The District Court dismissed Brown's complaint because it incorrectly found that Brown had failed to comply with the CRA's local notification provision. 42 U.S.C. § 2000a-3(c).

As an initial matter, the District Court failed to recognize record evidence that Brown had filed notice with DCOHR shortly after filing his CRA claim. As a result, the District Court held that Brown had not provided notice and could not cure his error because the local statute of limitation for filing a complaint had lapsed. Brown's post-filing notification, in effect, mooted the District Court's legal analysis on this point.

More fundamentally, the District Court ignored substantial Supreme Court precedent in mischaracterizing § 2000a-3(c) as a jurisdictional provision; the section is merely a claim-processing rule. As a result of this error, the District Court incorrectly construed the notice provision strictly and barred Brown from pursuing his CRA claim.

Because the notification provision is not jurisdictional, Brown should be permitted to pursue his CRA claim. Other courts have permitted plaintiffs to pursue discrimination claims despite notifying the local authority after filing a federal complaint. Moreover, under the District of Columbia code, notification of DCOHR is strictly perfunctory; DCOHR can never prevent a plaintiff from filing in federal court.

Even if this Court were to find that the notification provision is jurisdictional, this Court should recognize that Brown's attempt to notify the

District of Columbia before filing his federal claim and his prompt post-filing

notice constituted sufficient compliance under § 2000a-3(c).

## ARGUMENT

## I.     STANDARD OF REVIEW

This Court reviews Brown's appeal from the District Court's "dismissal for

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) *de novo*."

*Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all

of the factual allegations contained in the complaint."  *Id.*  "[D]ismissal of a *pro se*

claim as insufficiently pleaded is appropriate only in the most unsustainable of

cases."  *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008).  Where a plaintiff is

*pro se*, a district court should not only consider the *pro se* plaintiff's original

complaint but should read all of the *pro se* plaintiff's filings together before

granting a defendant's motion to dismiss.  *See Lindsey v. United States*, 448 F.

Supp. 2d 37, 62 (D.D.C. 2006) (citing *Richardson v. United States*, 193 F.3d 545,

548 (D.C. Cir. 1999)); *see supra* at p. 3 (citing *Pegram*).

The Court similarly reviews a dismissal for lack of subject matter

jurisdiction *de novo*.  *See Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir.

2010).  And this Court reviews *de novo* the District Court's ruling that the CRA's

notification provision is jurisdictional.  *United States v. Moore*, 703 F.3d 562, 572-73 (D.C. Cir. 2012).

## II.    THE DISTRICT COURT ERRED IN GRANTING WHOLE FOODS' MOTION TO DISMISS BROWN'S ADA CLAIM

The District Court accurately described the elements of a *prima facie* ADA case relating to "any place of public accommodation."  *See* AA10.  To state a claim under 42 U.S.C. § 12182(a), a plaintiff must allege:  (1) that he has a disability within the meaning of the ADA; (2) that the defendant owns, leases or operates a place of public accommodation; and (3) that the defendant discriminated against him by denying him a full and equal opportunity to enjoy the services the defendant provides.  *See id.*  For the purposes of Whole Foods' motion to dismiss, the District Court assumed that "Brown is disabled and that Whole Foods is a public accommodation," resulting in Brown meeting the first two requirements of the test.  AA11.  The District Court, however, then went awry in concluding that Brown could not meet the third criterion.  Because Brown's pleadings do plausibly allege that Whole Foods discriminated against him because of a failure to make reasonable accommodation, the District Court erred in dismissing his ADA claim for failure to state a claim upon which relief can be granted.  The District Court also failed to recognize that Whole Foods' discriminatory treatment of Brown stemmed from its failure to satisfy its obligations under the ADA to establish

- 20 -

policies to accommodate the needs of disabled individuals like Brown, a second

valid theory for ADA relief.

**A.     Under the "Reasonable Accommodations" Theory on Which the District Court Focused, Brown Has Set Forth a Plausible Claim of Disability Discrimination**

In assessing his ADA claim, the District Court "presume[ed]" that "Brown

intends to allege discrimination consisting of 'a failure to make reasonable

modifications in policies, practices, or procedures, when such modifications are

necessary to afford such goods, services, facilities, privileges, advantages or

accommodations to individuals with disabilities, unless the entity can demonstrate

that making such modifications would fundamentally alter the nature of such . . .

accommodations.'"  AA11 (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)).

The District Court erred in assessing whether Brown adequately stated a

claim based on a request for reasonable accommodation.  The District Court

opined that "Brown's only requested accommodation was that he 'receive help

from a manager in order to prevent future problems.'  But Brown never claims that

he ever sought to make good on this request or that Whole Foods ever denied it."

AA18.  The District Court concluded that, "[b]ecause Brown never alleges that

Whole Foods 'fail[ed] to make reasonable modifications in [its] policies, practices

or procedures' in order to accommodate his disability, he has not alleged a

violation of the ADA."  AA11 (internal citation omitted).

Simply stated, the District Court's conclusion ignores the copious details in Brown's pleadings establishing that: (1) Brown requested reasonable modifications of Whole Foods' policies; and (2) Whole Foods failed to address those requests, culminating in Brown's arrest.

### 1.     Brown Requested a Reasonable Modification

In an ADA Title III action based on a reasonable accommodation theory, the plaintiff must show that he requested a modification from a place of public accommodation. *See Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997). The ADA does not require that a plaintiff lodge a formal request: "'to request accommodation, an individual may use plain English and need not mention the ADA or use the phrase reasonable accommodation.'" *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999) (quoting Equal Employment Opportunity Commission ("EEOC") Guidance).[4] A court reviews whether a plaintiff made a "request" considering that "'remedial legislation [such as the ADA] should be construed broadly to effectuate its purposes.'" *Dudley v. Hannaford Bros. Co.,* 333 F.3d 299, 307 (1st Cir. 2003) (quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967)). Additionally, "under the concept of notice

---

[4] *Smith*, examined a claim under Title I of the ADA. However, *Smith* applies to a Title III claim as well. *See, e.g.*, *Johnson*, 116 F.3d at 1059 ("In light of the statutes' parallel language, we find no basis for distinguishing their respective burdens of proof.").

pleading, plaintiffs are not required to plead magic words to state a claim[,]" but merely plead facts from which the court can make reasonable inferences to support a plaintiff's claim. *Martin v. Taft*, 222 F. Supp. 2d 940, 978 (S.D. Ohio 2002) (citing *Martinez v. Hooper,* 148 F.3d 856, 858-59 (7th Cir. 1998)). This is especially true for *pro se* plaintiffs, *see supra* at p. 19; *see also Smith v. Scalia*, No. 13-CV-0298, 2014 U.S. Dist. LEXIS 71506 (D.D.C. May 26, 2014), and even more "particularly [so] when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Brown's two meetings with a Whole Foods supervisor in January of 2012, *see supra* at p. 7-8, constituted requests for modification of policies. Both times, he informed the supervisor of his disability, explained how shopping at the market exacerbated his symptoms, and requested that Whole Foods discourage employees from harassing him. It is hard to conceive of clearer, more direct and more reasonable requests than the ones set forth in Brown's pleadings. Again, the ADA does not require that Brown mention the statute or use the words "reasonable accommodation" in conveying his requests to Whole Foods, *see Smith*, 180 F.3d at 1172 (relying on EEOC Guidance); *see also Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1079 (9th Cir. 2004). Brown's pleadings satisfied the requisite standard.

The District Court granted Whole Foods' motion to dismiss for failure to

state a claim without considering all of the facts contained in Brown's pleadings. Any fair reading of his pleadings contradicts the District Court's conclusion that he failed to request modification.

### 2.    Whole Foods Failed to Make the Reasonable Modifications that Brown Requested

Brown's pleadings are equally clear on the question of Whole Foods' failure to make reasonable modifications in policies, practices, or procedures to accommodate his disability.  *See* 42 U.S.C. § 12182(b)(2)(A)(ii).  Determination of what is "reasonable" is fact-specific and done on a case-by-case basis.  *Fortyune,* 364 F.3d at 1083.  For example, the Second Circuit found a request that McDonald's menu "options [be] effectively communicated to [legally blind] individuals" to be reasonable.  *Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008).

The District Court found that Brown "never alleges" Whole Foods failed to make reasonable modifications.  AA12.  Brown's pleadings contradict this conclusion.  Brown made two requests for assistance to a Whole Foods supervisor in January of 2012.  *See supra* at p. 7-8 .  (AA35).  Yet, when Brown returned to the store to shop on February 4, 2012, Khalil, ostensibly another store manager, harassed Brown, called the police and had him arrested for trespassing.  *See supra* at p. 8-9. (AA36).  During that incident, Brown attempted to "make good" on his request for help by asking to speak with the manager, but Khalil identified himself

as a manager and summoned the police.  *See supra* at p. 9 (AA37).

Only one conclusion can be drawn from the incident culminating in Brown's arrest:  Whole Foods failed to accommodate Brown's requests to modify its policies and cease targeting Brown.  Indeed, Whole Foods never afforded Brown an opportunity meaningfully to seek help from the manager on February 4, 2012, despite his explicit request at that time for access to one.  *See* AA37.  This failure is particularly stark given that the individual who harassed Brown and then summoned the police identified himself as a manager.  As such, Whole Foods' previous assurances to Brown that he would have access to a supervisor capable of addressing his needs were purposeless.  Had Whole Foods delivered on its promise, as the ADA required, Brown would not have been arrested.

Brown has established that Whole Foods failed both to cease harassing Brown and to provide him with access to a supervisor capable of addressing his needs.  In dismissing his ADA complaint based on an incomplete or erroneous reading of Brown's pleadings and filings, the District Court ignored his well-plead facts.

**B.     Brown Has Also Stated a Valid ADA Claim on the Basis that Whole Foods Failed to Create and Enforce a Policy Requiring its Employees to Address Brown's Disability**

There is an additional theory on which Brown plausibly has stated a claim under the ADA:  Whole Foods had an obligation to create and enforce – but failed

then to create and enforce – a policy requiring its employees to address Brown's disability.  Under the ADA, a place of public accommodation "can and must ensure that [it] adopt[s] the proper policies and procedures to train [its] employees on dealing with disabled individuals and make reasonable efforts to ensure that those policies and procedures are properly carried out and enforced."  *Stan v. Wal-Mart Stores, Inc.*, 111 F. Supp. 2d 119, 127 (N.D.N.Y. 2000*)* (store satisfactorily accommodated shopper with service animals)*; see also Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (complaint states a claim that restaurant failed to address needs of blind diners).  Though it did recognize the prospect of this theory for liability applying in this case, the District Court erred in applying the governing law.

The District Court relied on *Stan* and *Camarillo*, cases addressing summary judgment and dismissal motions, respectively.  AA10-11.  Quoting *Stan,* which granted the defendants' motion for summary judgment, the District Court here found that, "[although] Whole Foods staff appear[ed] unpleasant, 'unfortunately, legislation such as the ADA cannot regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities.'" AA11 (quoting *Stan*, 111 F. Supp. 2d at 126-27).[5]

---

[5] It is hard to believe that the District Court could find Whole Foods' decision to have Brown arrested for trespassing while he was shopping to be merely "rude and

(footnote continued on next page)

The District Court mistakenly focused on *Stan's* procedural disposition rather than the fundamental legal principle articulated in that case and sanctioned by the Second Circuit in *Camarillo*: to address the needs of individuals with disabilities, a place of public accommodation must establish a policy to properly meet the needs of persons with disabilities and train and supervise employees to ensure that the policy is implemented. *See, e.g., Stan*, 111 F. Supp. 2d at 126 ("[d]efendants undertook remedial action by talking to the employees involved and conducting training on service animals").

The District Court, however, employed this precedent – which actually bolsters Brown's position – to his detriment. In *Camarillo*, clarifying *Stan*, the Second Circuit reviewed the dismissal of a legally-blind plaintiff's ADA complaint. 518 F.3d at 156. The plaintiff alleged that on multiple occasions she "informed employees [of defendants' restaurants] that because of her disability she could not read the menu herself, and that the employees often responded with annoyance or impatience, at best reading her only a part of the menu." *Id.* (internal quotation marks omitted). Vacating the decision, the Second Circuit held:

> *Stan*, therefore, does not stand for the proposition that so long as a disabled individual is permitted to shop (or eat), she cannot have suffered injury under the ADA. Rather, *Stan* holds simply that summary judgment is warranted where all the evidence in the record

---

(footnote continued from previous page)
insensitive."

demonstrates that the *defendants have taken all necessary steps* "to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals." 42 U.S.C. § 12182(b)(2)(A)(iii).

*Id.* 156 (emphasis added). Because this appeal also concerns a motion to dismiss, Brown need only create a reasonable inference that Whole Foods failed to take all "necessary steps" to ensure that customers with cognitive disabilities are not denied services or treated differently.

Like the plaintiff in *Camarillo*, Brown alleges multiple incidents of mistreatment. *See supra* at p. 5-9. His pleadings establish "more than mere rudeness or insensitivity, and more than one or two isolated mistakes." *Camarillo*, 518 F.3d at 157. The pleadings establish that, despite his repeated efforts to communicate his needs, Whole Foods' employees and management systematically disregarded his disability. Days after a meeting with a store supervisor to discuss his disability, Brown was arrested after an altercation with a different manager who failed to recognize or accommodate an escalating situation based on Brown's disability. *See supra* at p. 8-9. *See* AA18; AA44.

Despite Brown's best efforts, Whole Foods and its employees were ill-equipped to address his needs. Whole Foods either failed to establish policies and procedures to train its employees or neglected to ensure that its staff followed existing policies. If Whole Foods had met its obligations under the ADA, its employees would have served Brown in the manner to which he was entitled. The

pattern of harassment detailed by his pleadings – culminating in Brown's arrest at the behest of a Whole Foods' manager – is far worse than the conduct alleged in *Camarillo* or *Stan* and establishes a *prima facie* case that Whole Foods violated Title III of the ADA.

## III. THE DISTRICT COURT ERRED IN GRANTING WHOLE FOODS' MOTION TO DISMISS BROWN'S CRA CLAIM

Brown also contends that Whole Foods discriminated against him on the basis of his race, in violation of Title II of the CRA. *See* 42 U.S.C. §§ 2000a *et seq*. As the District Court noted, Title II ensures that "'[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion or national origin.'" AA12 (quoting 42 U.S.C. § 2000a(a)). "Brown claims that Whole Foods employees discriminated against him by stereotyping him, falsely accusing him of committing crimes, and treating him worse than the non-black customers." *Id*. Brown founds his CRA claim on the same facts underlying his ADA claim.

The District Court did not question the factual sufficiency of Brown's claim. Instead, it dismissed – erroneously – his claim based on an oversight relating to notification of the District of Columbia prior to the filing of the CRA claim in federal court. AA11-12. In conducting its analysis, however, the District Court

committed an oversight of its own; contrary to the District Court's findings, AA13-14, the record indicates that, shortly after filing his CRA claim, Brown provided written notice to DCOHR, the local agency authorized to receive discrimination complaints. *Supra* at p. 15.[6]

Because Brown provided notice to DCOHR, the District Court's erroneous ruling that the CRA's notification provision is jurisdictional is of great import. If, as *amicus* contends, § 2000a-3(c) is a mere claim-processing formality, then Brown's post-filing notice should be sufficient to satisfy the notification requirement. The late notice caused no prejudice to either Whole Foods or the District of Columbia. Indeed, other courts, when confronted with similar circumstances, have permitted plaintiffs to proceed with their claims (even when viewing the notice requirement as jurisdictional). In light of Congress's strong preference for encouraging civil rights claims, Brown should be permitted to proceed with his complaint under Title II of the CRA.

---

[6] Even if the Court were to afford jurisdictional effect to § 2000a-3(c), Brown should be given opportunity to supplement the record pursuant to 28 U.S.C. § 1653, to demonstrate that he provided constructive notice to the District of Columbia prior to the filing of the lawsuit. *See supra* at p. 15-16.

**A.    The District Court's Opinion Inaccurately States that Brown Failed to Provide Notice to the District of Columbia**

In dismissing his CRA claim, the District Court found that it lacked jurisdiction because Brown failed to comply with the statute's notice provision, 42 U.S.C. § 2000a-3(c).  AA13-14.  The District Court stated, without citation to the record, that "Brown does not deny that he has so far failed to file any notice with the DCOHR."  AA14.

In fact, when the District Court entered its opinion on September 4, 2013, Brown had already provided written notice to DCOHR.  *Supra* at p. 15 (Brown emailed notice to DCOHR on July 9, 2013 and received a response on July 15, 2013).  Brown placed this information in the record in the District Court as an attachment to his July 24, 2013, motion for extension of time to respond to Whole Foods' motion to dismiss.  AA59-63.  In his motion, Brown also noted that he "contacted DCOHR Chief Counsel Ms. Alexis P. Taylor and is informed of the possibility of 'tolling of the statute of limitations or other extending the filing limitation period.'"  AA59.

The District Court failed to recognize this record evidence, which moots much of its analysis relating to the application of § 2000a-3(c)'s notice requirement.  *See* AA13-16 (failure to provide notice denied District Court jurisdiction and, because the local statute of limitations had run, failure could not be cured).

- 31 -

**B.    The District Court Mischaracterized the CRA's Notice Provision as Jurisdictional**

Given its belief that Brown had failed to notify DCOHR, the court next

determined that the

> notice provision in Title II is a "mandatory jurisdictional prerequisite," *Hollis v. Rosa Mexicano DC, LLC*, 582 F. Supp. 2d 22, 24 (D.D.C. 2008), that applies to plaintiffs in states or political subdivisions that have their own anti-race-discrimination laws "establishing or authorizing a State or local authority to grant or seek relief [in such cases] . . . or to institute criminal proceedings with respect thereto."

AA13 (quoting 42 U.S.C. § 2000a-3(c)).

In reaching this conclusion, the court relied on two cases, *Harris v. Ericson*,

457 F.2d 765, 767 (10th Cir. 1972) (federal complaint precluded until state notice

provided) and *Hollis v. Rosa Mexicano DC, LLC*, 582 F. Supp. 2d 22, 25 (D.D.C.

2008) (same). While these cases did root the notice requirement in jurisdiction,

recent Supreme Court precedent undercuts their rationale that § 2000a-3(c) has

jurisdictional effect. The District Court's decision in this matter, based on these

two decisions, is similarly flawed. Instead, governing Supreme Court precedent

establishes that § 2000a-3(c)'s notice provision is not jurisdictional; it is a mere

claim-processing rule that has no bearing on the question of jurisdiction.

Beginning with *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006), the

Supreme Court has determined that "[o]n the subject-matter

jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have

- 32 -

been less than meticulous." The Court complained that district courts often

"dismiss[] for lack of jurisdiction when some threshold fact has not been

established, without explicitly considering whether the dismissal should be for lack

of subject matter jurisdiction or for failure to state a claim." *Id.* (internal citation

marks omitted). The Court "described such unrefined dispositions as drive-by

jurisdictional rulings that should be accorded no precedential effect on the question

whether the federal court had authority to adjudicate the claim in suit." *Id.*

(internal quotation marks omitted).

      *Arbaugh* drew a "readily administrable bright line" between jurisdictional

and non-jurisdictional requirements:

> If the legislature clearly states that a threshold limitation on a statute's
> scope shall count as jurisdictional, then courts and litigants will be
> duly instructed and will not be left to wrestle with the issue. But
> when Congress does not rank a statutory limitation on coverage as
> jurisdictional, courts should treat the restriction as nonjurisdictional in
> character.

*Id.* at 515-16 (internal citation omitted). In *Arbaugh*, the Court determined that the

"numerosity requirement" of Title VII of the CRA was *not* jurisdictional because it

"appears in a separate provision that does not speak in jurisdictional terms or refer

in any way to the jurisdiction of the district courts." *Id.* at 515 (internal quotation

marks omitted).

      The Supreme Court has continued to fortify *Arbaugh*'s bright-line test, using

it to reject arguments that various statutory mandates are jurisdictional. *See, e.g.,*

*Sibelius v. Auburn Reg'l Med. Ctr.,* 133 S. Ct. 817, 821-22 (2013) (180-day time limit for providers to file certain Medicare administrative appeals); *Henderson v. Shinseki*, 131 S. Ct. 1197, 1202-03 (2011) (120-day deadline for Veterans Court reviews); *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 163-65 (2010) (section 411(a) of the Copyright act providing that a copyright claim must be registered before commencement of an infringement suit).

Both *Reed Elsevier* and *Henderson* are particularly informative for present purposes.  In *Reed Elsevier*, the Court determined that a statutory provision is no more likely to be jurisdictional simply because it qualifies as a *procedural* requirement as opposed to a substantive element of a claim.  559 U.S. at 166 ("We similarly have treated as nonjurisdictional other types of threshold requirements that claimants must complete, or exhaust, before filing a lawsuit").

In *Henderson,* the Court examined a statute requiring that a veteran file a notice of appeal with the Veterans Court no more than 120 days after the Board of Veterans' Appeals denied his claim for federal benefits.  *See* 38 U.S.C. § 7266(a) ("[i]n order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed").  The Supreme Court stated that "[f]iling deadlines, such as the 120-day filing deadline at issue here, are

*quintessential claim-processing rules.*" *Henderson*, 131 S. Ct. at 1203 (emphasis added). As such, the Court examined whether Congress gave "'clear' indication" that it "wanted the rule to be 'jurisdictional.'" *Id*. (quoting *Arbaugh*, 546 U.S. at 515-16). Absent such indication, the statute would be classified as a mere claim-processing provision without jurisdictional effect. *Henderson,* 131 S. Ct. at 1203.

In finding in *Henderson* that the veterans appeal statute constituted a non-jurisdictional claim-processing rule, the Court relied on four factors. First, unlike a jurisdictional provision in the same statute relating to Federal Circuit review of Veterans Court decisions, Congress did not "cast that provision [under review] in language . . . that has long been understood to be jurisdictional." *Henderson,* 131 S. Ct. at 1204-05. Second, the Court found that the statute's "mandatory language" directing that veterans "shall file a notice of appeal . . . within 120 days" did not indicate it was jurisdictional. *Id*. (citing *Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment,* 558 U.S. 67, 81-82 (2009)).

Third, the Supreme Court held that the statute's placement in a "subchapter entitled 'Procedure'" rather than the "Organization and Jurisdiction" subchapter "suggest[ed] that Congress regarded the 120-day limit as a claim-processing rule." *Henderson,* 131 S. Ct. at 1205 (citing *INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991)). Finally and "[m]ost telling" for the Court was that the "'solicitude of Congress for veterans is of long standing,'" which "'place[s] a

thumb on the scale in the veteran's favor.'" *Id.* (quoting *United States v. Oregon*, 366 U.S. 643, 647 (1961) and *Shinseki v. Sanders*, 556 U.S. 396, 416 (2009) (Souter, J. dissenting)).

As explained below, the District Court erred in failing to acknowledge the *Arbaugh* line of cases, including *Henderson*.

### C.     Application of the *Arbaugh* Analysis to § 2000a-3(c) Establishes that the Notice Provision is Not Jurisdictional

Like the 120-day filing deadline addressed by the Supreme Court in *Henderson*, Title II's notice provision is a "quintessential claim-processing rule[]." 131 S. Ct. at 1203.  Accordingly, this Court should reverse the District Court's contrary ruling and hold, based on *Arbaugh* and its progeny that the notice provision is not "jurisdictional." *Id.*

As in *Henderson*, the determination as to whether Title II's notice provision is jurisdictional or just a claim-processing rule must start with the statutory language.  The relevant CRA language is as follows:

> [N]o civil action may be brought under subsection (a) before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

42 U.S.C. § 2000a-3(c).  While the statute's "mandatory language" convinced the District Court that the requirement was jurisdictional, this analysis is in error.

AA13-14.  As the Supreme Court stated in *Henderson*, "[i]t is true that § 7266 [the filing requirement there at issue] is cast in mandatory language, but we have rejected the notion that 'all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional.'"  131 S. Ct. at 1205 (quoting *Union Pac.*, 130 S. Ct. at 596).  The language of the notice subsection in the CRA, silent on the question of jurisdiction, likewise provides no "clear indication" from Congress.  This omission indicates, as in *Henderson* with respect to the filing deadline there in question, that § 2000a-3(c) is not jurisdictional.

The section's placement within the Title II of the CRA also indicates that it is not jurisdictional.  Section 2000a-3 is titled "Civil actions for preventive relief."  None of the provision's other three subsections address jurisdiction.  In contrast, Congress titled § 2000a-6 of the subchapter "*Jurisdiction*, exhaustion of other remedies, exclusiveness of remedies; assertion of rights based on other Federal or State laws and pursuit of remedies for enforcement of such rights." (Emphasis added).  Placement of the notice provision outside the jurisdictional section "suggests Congress regarded [the notice provision] as a claim-processing rule." *Henderson*, 131 S. Ct. at 1205 (separate jurisdictional provision establishes non-jurisdictional nature of statute under review); *see also INS*, 502 U.S. at 189 (statute's title can "aid in resolving an ambiguity in the legislation's text").

Most influential in establishing that the notice provision is a claim-processing rule is the CRA's special purpose. The Supreme Court has applied "broad[] coverage" of the CRA's language "[i]n light of the overriding purpose of Title II 'to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public,' H. R. Rep. No. 914, 88th Cong., 1st Sess., 18." *Daniel v. Paul*, 395 U.S. 298, 307-08 (1969). In construing Title II's public accommodation provisions, courts have traditionally "accorded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of racial discrimination." *United States v. Med. Soc'y of S.C.*, 298 F. Supp. 145, 151-52 (D.S.C. 1969) (citing precedent for liberal interpretation of CRA). As with the "long standing" Congressional "solicitude" for veterans cited by the Court in *Henderson*, the language of the CRA must be afforded a similarly sympathetic construction for those alleging they are victims of racial discrimination. 131 S. Ct. at 1205-06.

The CRA's legislative history buttresses these conclusions. Nowhere in its extended discussion of the 30-day notice requirement does Congress identify the provision as jurisdictional. Rather, it repeatedly refers to the requirement as a "condition precedent." S. Rep. No. 88-872, at 1, 6 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2355, 2356, 2360. Nothing about this description suggests a

jurisdictional effect or provides a "clear indication" that Congress intended to establish the provision as jurisdictional.  *See, e.g., Henderson*, 131 S. Ct. at 1203.

### D.     In Lieu of An Appropriate Jurisdictional Analysis, The District Court Relied on Flawed Precedent

Despite the Supreme Court's direction to conduct a close jurisdictional analysis, the District Court casually deemed § 2000a-3(c)'s notice provision jurisdictional.  *See* AA13-14.  The District Court's oversight is not surprising; every previous federal decision addressing this provision has similarly failed to conduct the required searching analysis.  For example, the District Court principally relied on *Hollis v. Rosa Mexicano DC, LLC*, 582 F. Supp. 2d 22, 25 (D.D.C. 2008), which eschewed the analysis mandated by the *Arbaugh* line of cases and ultimately equivocated on the question of jurisdiction.  *See Hollis*, 582 F. Supp. 2d at 25 ("[w]hether the Title II notice is jurisdictional or, like a statute of limitations, subject to equitable exceptions such as waiver or estoppel, it is clear that the notice requirement applies").  The District Court also quoted the Tenth Circuit's decision in *Harris v. Ericson*, 457 F.2d 765, 767 (10th Cir. 1972), decided long before *Arbaugh*.  *Harris* epitomizes the type of "drive-by jurisdictional rulings" denigrated by the Supreme Court.  *Harris* simply assumed that § 2000a-3(c) has jurisdictional effect and moved on.  *See* 457 F.2d at 766 ("The legislative intent appears to us to be quite clear.").

- 39 -

In sum, the District Court's cursory analysis of the jurisdictional nature of the statute is the product of a long line of inadequate decisions. Neither *Hollis* nor *Harris* satisfy *Arbaugh*'s analytical mandate. Other precedent addressing this question is similarly insufficient. *See, e.g., Stearnes v. Baur's Opera House, Inc.,* 3 F.3d 1142, 1144-45 (7th Cir. 1993) (citing *Harris* as basis for dismissal for lack of jurisdiction without *Arbaugh*-type analysis); *Bilello v. Kum & Go, LLC,* 374 F.3d 656, 659 (8th Cir. 2004) (citing *Harris* and *Stearnes* for same proposition).

As the Supreme Court directs, this Court should afford no "precedential effect" to these decisions in assessing whether § 2000a-3(c)'s notice requirement is jurisdictional. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) (declining to rely on "less than meticulous" Supreme Court precedent).

### E.      Because Providing Notice is Not the Same as Filing a Complaint, Even If Brown Had Not Notified DCOHR Within the Statute of Limitations He Would Not Be Precluded from Proceeding

After finding the notice provision to be jurisdictional, the District Court determined that "it is too late for Brown to cure the deficiency in his claim by filing such a notice [with DCOHR]." AA14.[7]  The District Court held that the statute of limitations applicable to the local discrimination provision, D.C. Code §

---

[7] Again, Brown had no deficiency; the record reflects that Brown provided written notice to DCOHR nearly two months before the District Court issued its opinion. *Supra* at p. 15.

2-1403.04(a), had expired and that equitable tolling did not apply.  AA14-15.

"Because it is no longer possible for Brown to comply with Title II's notice

requirement, amendment will not cure the notice deficiency."  AA15-16.

      The District Court's legal analysis is in error.  Several courts have rejected

application of a state statute of limitations to determine compliance with Title II's

notice provision.  For instance, in *Daigle v. Friendly Ice Cream Corp.*, 957 F.

Supp. 8 (D.N.H. 1997), the district court assessed the notice requirement (which

also applies in some ADA contexts) in this way:

> [I]n order to satisfy the prerequisites of an ADA claim contained in
> section 2000a-3(c), a party is not required to file a complaint or to
> otherwise pursue action under the applicable state anti-discrimination
> law.  Section 2000a-3(c) only requires that notice be given to the
> "appropriate authority," and giving notice to state authorities is not the
> same thing as filing a state law complaint. Notice received by an
> appropriate state authority after a state law complaint has been time
> barred still may satisfy section 2000a-3(c) because section 2000a-3(c)
> does not require any complaint to ever be brought.

*Daigle*, 957 F. Supp. at 11; *see also Hill v. Shell Oil Co.,* 78 F. Supp. 2d 764, 774

n.9 (E.D. Ill. 1999) (Title II case describing *Daigle's* "cogent and succinct

analysis" of the same principle).  *Hill* offers a hypothetical that persuasively

demonstrates why a state statute of limitations should not govern the notice

provision:

> One can imagine a state, intent on foreclosing public accommodations
> lawsuits, enacting a one-day limitations period on state administrative
> actions.  Under defendants' theory, plaintiffs who do not file state
> administrative charges within that one-day period would lose their

right to pursue Title II relief in federal court.  Surely, Congress did not
intend such a result.

*Hill*, 78 F. Supp. 2d at 774-75.

Accordingly, the District Court's determination that the statute of limitations

would have barred Brown from filing a notice with the DCOHR under the District

of Columbia code should not control whether Brown complied, or effectively

complied shortly after filing his complaint, with § 2000a-3(c)'s notice provision.

### F.    Because § 2000a-3(c) is a Claim-Processing Rule, Brown Should Not Be Barred From Pursuing His Civil Rights Claim

Because § 2000a-(3)(c) is a mere claim-processing rule, this Court should

recognize an equitable exception to the pre-filing notice requirement and deem

Brown's post-filing notice sufficient.  This holding would be consistent with this

Court's precedent:  "The different treatment of claim-processing rules and

jurisdictional requirements has significant effects on the scope of authority held by

adjudicatory tribunals.  Claim-processing rules 'typically permit [tribunals] to toll

the limitations period in light of special equitable considerations.'" *Menominee*

*Indian Tribe of Wis. v. United States*, 614 F.3d 519, 524 (D.C. Cir. 2010) (quoting

*John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133 (2008) and holding

that six-year filing deadline in Contracts Disputes Act, 41 U.S.C. § 605(a), was a

claim-processing provision potentially subject to equitable tolling).

This Court addressed a similar question in the context of the EEOC filing requirement in the Age Discrimination in Employment Act ("ADEA").  *See Schuler v. Pricewaterhousecoopers, LLP*, 514 F.3d 1365, 1375-76 (D.C. Cir. 2008).  Analogizing to Title VII of the CRA, the Court reversed a decision granting a motion to dismiss because the plaintiff failed to satisfy a mandatory filing requirement.  The Court rejected the District Court's strict application of the filing requirement because it "would effectively rewrite the ADEA's administrative prerequisites, making them traps for the unwary, poised to spring into action and deny those who may have suffered employment discrimination their right to seek redress in federal court." *Id.* at 1375.  *Schuler* reversed the district court's decision despite the fact that the plaintiff had retained counsel. *Id.* (interpreting the statute "for all aggrieved employees" not just unrepresented individuals).  Of course, Brown is acting *pro se* in this matter and provided notice shortly after filing his complaint.  He, therefore, deserves additional leniency in this matter.

### G.    Brown's Notification of the District of Columbia Shortly After Filing His Complaint Satisfies the Purpose of the Statute

In bringing his complaint in federal court and now seeking relief in this Court, Brown has displayed considerable acumen.  That he failed strictly to comply with a notice provision, particularly in a statute that permits filing without exhaustion of other remedies, should not serve to bar him from pursuing a complaint that states an otherwise valid federal claim.  As this Court concluded in *Schuler*, "[w]e must therefore avoid construing the statute in a way that imposes extra-textual burdens 'serv[ing] no purpose other than the creation of an additional procedural technicality.'" 514 F.3d at 1376 (quoting *Love v. Pullman Co.*, 404 U.S. 522, 526 (1972)).

Other courts have found a plaintiff's late notification, occurring "months" after filing a complaint, to be sufficient notice under § 2000a-3(c):

> Plaintiff has offered evidence confirming that he complied with the notice requirement, although he did so several months after commencing this action.  Because Plaintiff is not required to exhaust state administrative proceedings, he is in full compliance with the requirements established in 42 U.S.C. § 12188(a)(1) and § 2000a-3(c).

*Burkhart v. Asean Shopping Ctr., Inc.*, 55 F. Supp. 2d 1013, 1019 (D. Ariz. 1999); *see also Emery v. Pennies*, No. CV54007277, 2005 Conn. Super. LEXIS 3157, at *21 (Conn. Super. Ct. Nov. 2, 2005) ("it is significant that the parties have offered evidence that the plaintiff has complied with [§ 2000a-3(c)], although he did not do so until [two and a half months] after he commenced this action").

- 44 -

Brown too complied with § 2000a-3(c), doing so shortly after filing his CRA claim. *Supra* at p. 15. This effective notice – and the constructive notice that he provided to the District of Columbia prior to filing (*supra* at p. 15-16) – establish that he has been in full compliance with the CRA's notification provision since July of 2013.

### H.   Under the District of Columbia Code, Notification Is Strictly *Pro Forma* and Brown's Post-Filing Notice Caused No Prejudice to the District of Columbia or Whole Foods

Because of the manner in which the District of Columbia and federal civil rights provisions relate to one another, the rights and obligations of the parties were unaffected by Brown's post-filing notification. Congress enacted the 30-day notice provision not for the protection of potential defendants but simply "to provide a state agency with the opportunity to invoke its remedies for discriminatory acts and practices occurring in its jurisdiction." *Hill*, 78 F. Supp. 2d at 771. As such, Whole Foods cannot contend that it was prejudiced by Brown's late notice to DCOHR. Nor does this matter raise concerns regarding judicial resources; had DCOHR elected to proceed with its own investigation of Brown's claims after it received notice on July 9, 2013, § 2000a-3(c) would have instructed the District Court to stay Brown's matter. DCOHR's only substantive response to Brown was to advise him to hire counsel. AA62 ("let me <u>strongly</u> encourage you to promptly seek legal assistance in this matter").

As for the District of Columbia's interests, the particulars of its Code indicate that the District has elected to make notice pursuant to the CRA entirely a perfunctory exercise.  Under the statute, DCOHR can *never* prevent a plaintiff from proceeding with a federal Title II claim.  Specifically, the District Court cited D.C. Code § 2-1403.04 as the basis for Brown's failure to comply with the notice requirement.  *See* AA14-15.  The code's requirements, read in tandem with § 2000a-3(c), demonstrate that the notice requirement is a mere formality for plaintiffs seeking to file federal CRA claims in the District of Columbia.

First, D.C. Code § 2-1403.04(a) requires that all filed complaints include "the name and address of the person alleged to have committed the violation . . . and shall set forth the substance thereof, and such other information as may be required by [DCOHR]."  Unlike these substantive requirements, the federal provision simply asks for "written notice of [the] alleged act or practice."  42 U.S.C. § 2000a-3(c).  There is no guarantee that the basic notice required by federal law would satisfy the District of Columbia's more demanding requirements.

Brown's July 9, 2013, notice to the DCOHR director exemplifies the dichotomy between the federal and local requirements.  Brown's email certainly satisfied § 2000a-3(c)'s requirement of basic "written notice of [the] alleged act or practice."  *See* AA61 (identifying Brown's "demoralizing disability discrimination

- 46 -

and racial profiling at the Foggy Bottom Whole Foods"). While this notice

certainly sufficed under federal law, it triggered no action by DCOHR; the general

counsel for the local authority simply replied that, "[we] have not found any matter

that you have pending before this Office. Accordingly, there is nothing before the

Office to act upon." AA62. Thus, even Brown's explicit notice to the DCOHR

failed to trigger a local investigation.

Even if DCOHR had accepted Brown's July 9, 2013, notice as a valid

complaint, the District of Columbia's code would have authorized Brown to

withdraw the notice at "*any time* prior to the completion" of an investigation. D.C.

Code § 2-1403.04(b) (emphasis added). Thus, even when the District of Columbia

receives a notice, deems it a valid complaint and initiates an investigation, a

plaintiff is free to withdraw the notice at any time and file a complaint in federal

court.[8] Still further, even without the withdrawal of a notice, DCOHR cannot

initiate an investigation until it has granted the parties up to 45 days to mediate. *Id.*

§ 2-1403.04(c). Of course, § 2000a-3(c) merely requires a plaintiff to wait 30 days

before filing a federal complaint.

---

[8] The *amicus* can see no legal impediment to a plaintiff filing notice with DCOHR, withdrawing it *immediately*, and then filing a federal complaint 30 days later as authorized by § 2000a-3(c).

In light of the above, the District of Columbia's regime cannot be read as creating an effective means of promoting state or local action in lieu of a federal claim.  Interestingly, the District of Columbia enacted the local code section in 1977, 13 years after passage of the CRA, and amended it in 1997 and 1999.  *See* D.C. Code § 2-1403.04 (history).  If the District of Columbia had wished to preserve its ability to invoke its remedies for discriminatory acts and practices it would not have permitted potential plaintiffs simply to opt out of its system after providing notice pursuant to § 2000a-3(c).

This Court again addressed a similar issue in *Schuler*, 514 F.3d at 1373.  In that case, the district court dismissed plaintiff's complaint because he filed his claim with the EEOC's New York office (which had no "worksharing agreement" with DCOHR) rather than the District of Columbia's EEOC office (which did have such an agreement).  *Schuler*, 514 F.3d at 1372.  The district court held that this action violated an ADEA requirement that plaintiff also file his charges with his state agency authorized to grant relief from the alleged discrimination.  *Id.* at 1372 (citing 29 U.S.C. § 633(b)).  Reversing the district court's dismissal, this Court held, *inter alia*, that "DCOHR has waived its right to process age discrimination claims initially filed with the EEOC."  *Id.* at 1373 (citing agreement providing that EEOC and DCOHR "will process all . . . charges that they originally receive").  This Court concluded that, "the District of Columbia *has preemptively declined its*

*opportunity*, effectively telling the EEOC that it wants nothing to do with ADEA claims the Commission receives first.  Had the D.C. agency physically received Schuler's charge, it would have taken no action on it." *Id*. at 1373 (emphasis added). As such, this Court held that the plaintiff had complied with the ADEA state filing requirement, despite not filing his claim with the state authority. *Id*. at 1376.

While the District of Columbia may not have completely declined its opportunity to review discrimination complaints, § 2-1403.04 comes very close. The 37 year-old section provides the District of Columbia with no ability to prevent a plaintiff from filing a discrimination complaint in federal court.  Like the provision at issue in *Schuler*, only plaintiffs who opt to file and maintain their complaints with the local authority need remain under DCOHR's jurisdiction.

In light of this statutory framework, there is no rationale consistent with equity for denying Brown access to federal court because he failed to participate in this claim-processing formality prior to filing his federal lawsuit.

**I.     Even If the Notice Requirement Is Jurisdictional, or Otherwise Needed to Be Followed Prior to the Filing of the Lawsuit, Brown Should Not Be Barred**

If this Court affirms the District Court's finding that the notice provision is jurisdictional, it should still allow Brown to augment his pleadings to memorialize that he did, in fact, sufficiently notify the District of Columbia prior to filing his federal lawsuit.  Both 28 U.S.C. § 1653, which mandates that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," and the latitude afforded *pro se* plaintiffs in civil rights matters counsel for such a result.

This Court has construed § 1653's "liberal amendment rule" to permit a "party who has not proved, or even alleged, that diversity exists to amend his pleadings even as late as on appeal." *District of Columbia ex rel. Am. Combustion, Inc. v. Transmerica Ins. Co.,* 797 F.2d 1041, 1044 (D.C. Cir. 1986).  In the context of a motion to dismiss, this Court has held that a district court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (permitting district court to look beyond pleading to determine jurisdiction in Foreign Sovereign Immunities Act case).  Indeed, the "district court retains 'considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction,' but it must

- 50 -

give the plaintiff 'ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'" *Id.* (quoting *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179-80 (D.C. Cir. 1984)).

The District Court erroneously presumed that Brown had "so far failed to file notice with DCOHR," AA14. The District Court both failed to examine the record or query Brown about his actions relating to local notice. Indeed, given Brown's numerous filings and his demonstrated ability to interpret and employ federal law, it is not surprising that he quickly complied with the notice requirement to DCOHR once he learned of his oversight. *Supra* at p. 15 (Brown filed notice with DCOHR within six days of Whole Foods raising the issue). The District Court's inquiry would have also revealed that, prior to filing his federal CRA claims, Brown reported his mistreatment by Whole Foods to Haydn Demas, an ADA Specialist, Employment, with DCODR.[9] This action constituted constructive, pre-filing notice to the District of Columbia and should also serve to satisfy § 2000a-3(c).

In *Daigle*, the court found that "a letter sent to the attorney general constitutes written notice to an 'appropriate state authority . . . [e]ven though the

---

[9] As noted, *supra* at p. 15-16, the *amicus* understands from Brown that the exchange with DCODR occurred; Brown should be given opportunity to prove the point, at least on remand to the District Court if necessary, or to supplement his jurisdictional allegations here *via* 28 U.S.C. § 1653.

Commission for Human Rights administers the anti-discrimination law, the attorney general is, nonetheless, an 'appropriate state authority." 957 F. Supp. at 11 (quoting § 2000a-3(c)).

Similarly, Brown's report to the DCODR should serve to establish pre-filing notice under the CRA. Indeed, one of DCODR's statutory duties is to "[p]rovide information and referral, legal information, and assistance with filing complaints with the Office of Human Rights to individuals who have questions about disability rights or are experiencing obstacles to receiving services." D.C. Code § 2-1431.04(6).

In light of Brown's concerted efforts to notify the District of Columbia, the District Court's treatment of Brown was particularly harsh given his *pro se* status. *See Velez-Villaran v. Carico Int'l, Inc.,* 715 F. Supp. 2d 250, 252 (D.P.R. 2010) ("the Court will not dismiss this action at this juncture, on essentially technical grounds, without affording Ms. Velez-Villaran some opportunity to replead") (citing *Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000)).

## **CONCLUSION**

The District Court's decision dismissing Brown's ADA and CRA claims should be reversed.

- 52 -

Dated: July 8, 2014                    Respectfully submitted,

                                       /s/ Anthony F. Shelley
                                       Anthony F. Shelley
                                       Andrew D. Herman
                                       Miller & Chevalier Chartered
                                       655 Fifteenth St., NW, Suite 900
                                       Washington, DC 20005
                                       Telephone: (202) 626-5924
                                       Facsimile: (202) 626-5801
                                       Email:  ashelley@milchev.com
                                               aherman@milchev.com

                                       *Court-Appointed Amicus Curiae*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

<u>XX</u> this brief contains 11,994 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

___ this brief uses a monospaced typeface and contains [*state the number of lines*] of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because:

<u>XX</u> this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font in Times New Roman, or

___ this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


      July 8, 2014                  /s/ Anthony F. Shelley

           Date                       Anthony F. Shelley

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2014, I electronically filed the foregoing

**BRIEF OF COURT-APPOINTED *AMICUS CURIAE* ON BEHALF OF**

**APPELLANT** with the Clerk of Court using the CM/ECF System, which will

send notice of such filing to the following registered CM/ECF users:

Christopher Humber
Ogletree, Deakins, Nash, Smoak & Stewart, PC
1909 K Street, NW, Suite 1000
Washington, DC 20006
Email: christopher.humber@ogletreedeakins.com

I further certify that on July 14, 2014 I have mailed a true and correct copy

of the foregoing **BRIEF OF COURT-APPOINTED *AMICUS CURIAE* ON**

**BEHALF OF PEITTIONERS** by First-Class Mail, postage prepaid, to the

following non-CM/ECF participant, addressed as follows:

Randy Brown
1417 Ames Place, NE
Washington, DC 20002
Email: zeugma7@verizon.net

I also certify that, on July 8, 2014, I will dispatch, within two business days,

by hand-delivery, the requisite EIGHT (8) copies of the **BRIEF OF COURT-**

**APPOINTED *AMICUS CURIAE*, ON BEHALF OF APPELLANT** to the Clerk

of the United States Court of Appeals for the D.C. Circuit.

/s/ Anthony F. Shelley
Anthony F. Shelley