No. 13-7156

_____

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

RANDY BROWN,
*Plaintiff-Appellant*

v.

WHOLE FOODS MARKET GROUP, INC.,
*Defendant-Appellee*

_____

On Appeal from the United States District Court
for the District of Columbia (Judge James E. Boasberg)

_____

**REPLY BRIEF OF COURT-APPOINTED *AMICUS CURIAE*
ON BEHALF OF APPELLANT**

Anthony F. Shelley
  *Counsel of Record*
Andrew D. Herman
Miller & Chevalier Chartered
655 Fifteenth St., NW, Suite 900
Washington, DC 20005
Telephone: (202) 626-5924
Facsimile: (202) 626-5801
Email:  ashelley@milchev.com
     aherman@milchev.com
*Court-Appointed Amicus Curiae*

August 28, 2014

## **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ..................................................................1

ARGUMENT ..........................................................................................2

I.   BROWN'S FILINGS ESTABLISH A CLAIM UNDER TITLE
     III OF THE ADA ..........................................................................2

     A.   Whole Foods Applies an Improperly Stringent Pleading
          Standard for the Motion to Dismiss ......................................4

     B.   Brown Has Provided Sufficient Notice of His Claims to
          Whole Foods...........................................................................6

          1.   Brown Requested that Whole Foods Employees
               Cease Their Practice of Harassment ...........................8

          2.   Brown Requested Access to a Whole Foods
               Manager in the Event of Future Problems...............11

          3.   Whole Foods' Failure to Implement a Policy to
               Address Brown's Disability Violated the ADA .......13

II.  BROWN'S NOTICE TO THE DISTRICT OF COLUMBIA
     SATISFIES THE PURPOSE OF THE CRA's NOTICE
     PROVISION ...............................................................................14

     A.   The CRA Does Not Require Brown to Comply With the
          District of Columbia's Requirements for Filing a
          Discrimination Complaint ...................................................14

     B.   Recent Supreme Court Precedent Establishes that
          § 2000a-3(c) is Not Jurisdictional ......................................17

     C.   As a Claim-Processing Provision, § 2000a-3(c)'s Notice
          Requirement Should Be Tolled............................................20

i

D.    Brown's Provision of Post-Filing Notice to the District of
Columbia Satisfies the Statute...........................................................23

CONCLUSION .......................................................................................24

CERTIFICATE OF COMPLIANCE...................................................*post*

CERTIFICATE OF SERVICE ...........................................................*post*

# TABLE OF AUTHORITIES*

**Page(s)**

## Cases

*Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*,
525 F.3d 8 (D.C. Cir. 2008) ................................................................5

*\*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ...........................................................17, 19, 20

*Aros v. McDonnell Douglas Corp.*,
348 F. Supp. 661 (C.D. Cal. 1972) ...................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................4, 5

*Boykin v. KeyCorp*,
521 F.3d 202 (2d Cir. 2008) ................................................5

*Burkhart v. Asean Shopping Ctr., Inc.*,
55 F. Supp. 2d 1013 (D. Ariz. 1999) .................................23

*\*Camarillo v. Carrols Corp.*,
518 F.3d 153 (2d Cir. 2008) ................................................13

*\*Daigle v. Friendly Ice Cream Corp.*,
957 F. Supp. 8 (D.N.H. 1997) ...........................................16, 22

*Daniel v. Paul*,
395 U.S. 298 (1969) ...........................................................21

*Emery v. Pennies*,
No. CV54007277, 2005 Conn. Super. LEXIS 3157
(Conn. Super. Ct. Nov. 2, 2005) ......................................23

*Gwaltney of Smithfield, Inc. v. Chesapeake Bay Found., Inc.*,
484 U.S. 49 (1987) ...........................................................22

*Hallstrom v. Tillamook Cnty.*,
   493 U.S. 20 (1989)................................................................20, 21, 22

*Harris v. Ericson*,
   457 F.2d 765 (10th Cir. 1972) ..........................................................16

*Henderson v. Shinseki*,
   131 S. Ct. 1197 (2011)................................................................17, 19

*Hill v. Shell Oil Co.*,
   78 F. Supp. 2d 764 (E.D. Ill. 1999) ..........................................16, 17

*Hunter v. District of Columbia*,
   No. 12-1960, 2014 U.S. Dist. LEXIS 114075
   (D.D.C. Aug. 18, 2014) ........................................................................5

*John R. Sand & Gravel Co. v. United States*,
   552 U.S. 130 (2008)............................................................................19

*Lentini v. Cal. Ctr. for the Arts*,
   370 F.3d 837 (9th Cir. 2004) ............................................................10

*Lindsey v. United States*,
   448 F. Supp. 2d 37 (D.D.C. 2006)......................................................5

*Love v. Pullman Co.*,
   404 U.S. 522 (1972)............................................................................21

*May v. California Hotel & Casino, Inc.*,
   No. 2:13-cv-66, 2014 WL 1494231 (D. Nev. Apr. 14, 2014)............20

*Menominee Indian Tribe of Wis. v. United States*,
   614 F.3d 519 (D.C. Cir. 2010)..........................................................19

*Richardson v. United States*,
   193 F.3d 545 (D.C. Cir. 1999)............................................................5

*Stan v. Wal-Mart Stores, Inc.*,
   111 F. Supp. 2d 119 (N.D.N.Y. 2000)........................................13, 14

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002)..........................................................6, 9, 11, 13

*United States v. Med. Soc'y of S.C.*,
   298 F. Supp. 145 (D.S.C. 1969) ..................................................................21

*Zipes v. Trans World Airlines, Inc.*,
   455 U.S. 385 (1982) ..........................................................................18, 21

**Statutes**

28 U.S.C. § 1653 ..........................................................................................15

42 U.S.C. §§ 2000a *et seq* ............................................................................1

42 U.S.C. § 2000a ........................................................................................14

42 U.S.C. § 2000a-3................................................. 2, 14, 15, 16, 17, 18, 19, 20, 22

42 U.S.C. § 2000a-6...............................................................................17, 18

42 U.S.C. §§ 12101 *et seq.*...........................................................................1

42 U.S.C. § 12182...............................................................................1, 6, 10

**Other Authorities**

S. Rep. No. 88-782 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2355 ........................19

Fed. R. Civ. P. 12 ..........................................................................................4

*Authorities upon which we chiefly rely are marked with an asterisk.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's order granting Appellee Whole Foods' motion to dismiss Appellant Randy Brown's claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and Title II of the Civil Rights Act of 1964 ("CRA"), 42 U.S.C. §§ 2000a *et seq.*

A.     The district court dismissed Brown's ADA claim alleging that Whole Foods, as a place of public accommodation, had discriminated against him on the basis of his cognitive disability. *See* 42 U.S.C. § 12182(a). The court concluded that because Brown had not alleged that "Whole Foods *fail[ed]* to 'make reasonable modifications in [its] policies, practices, or procedures' in order to accommodate his disability, 42 U.S.C. § 12182(b)(2)(A)(ii) (emphasis added), he has not alleged a violation." AA11-AA12 (alterations in original). The court's decision ignored significant allegations in the filings establishing that Brown, a *pro se* plaintiff, had made two explicit requests for modification from Whole Foods and, thus, sufficiently stated a Title III claim.

Whole Foods' brief repeats this error, similarly failing to acknowledge the copious details in Brown's filings. Whole Foods also advocates for the application of an improperly stringent standard to survive a motion to dismiss, particularly for a *pro se* plaintiff like Brown.

B.     The district court also dismissed Brown's claim of racial discrimination pursuant to Title II of the CRA because he allegedly failed to comply with the statute's provision requiring notice to the appropriate state or local authority 30 days before he filed his federal complaint.  *See* 42 U.S.C. § 2000a-3(c).  The district court again failed to acknowledge facts in Brown's filings establishing that he provided post-filing notice to the District of Columbia.  Compounding this error, the Court mistakenly ruled that § 2000a-3(c)'s notice provision had jurisdictional effect that precluded application of equitable modification of the notice requirement.

*Amicus*'s opening brief established that, under recent Supreme Court precedent, the district court's jurisdictional ruling relied on decades of now-irrelevant opinions.  Whole Foods likewise erroneously asserts that the notice requirement is jurisdictional, and then Whole Foods fails to rebut *amicus'*s position that Brown's notice to the District of Columbia should be equitably deemed to satisfy the statute's non-jurisdictional notice requirement.

## ARGUMENT

## I.     BROWN'S FILINGS ESTABLISH A CLAIM UNDER TITLE III OF THE ADA

Brown is an African-American resident of Washington, D.C., who has a cognitive disability caused by a traumatic brain injury.  AA17.  Brown exhibits socially abnormal behavior as a result and is susceptible to twitching and making

2

abnormal facial expressions.  AA32.  When placed in stressful or complicated environments, he can experience mental confusion and disorientation.  *Id.*

Brown enjoys imported food and wine, AA34, AA43, and he often shopped at the Whole Foods store in Washington, D.C.'s Foggy Bottom neighborhood. AA44.  On several occasions in 2011 and 2012, apparently in reaction to his behavior and race (and as must be assumed to be true for purposes of disposition of the motion to dismiss that the district court granted, *see infra* p. 5), Whole Foods employees subjected Brown to insensitive and inhumane harassment.  *Amicus* Br. 5-11 (detailing repeated mistreatment).

In a measured response to his mistreatment, Brown twice met with a Whole Foods supervisor named "Ashley" to request assistance.  AA34-35, AA44, AA65. He informed her of his disability and explained that his experiences at Whole Foods had exacerbated his symptoms.  AA35, AA65.  Though it should be unnecessary for any individual – regardless of his disability or appearance – to be compelled to make such a request for assistance, Brown did just that.  He asked for two easily accomplished modifications:  first, that Whole Foods educate its employees about his disability and instruct them to refrain from harassing him, *id.*; and second – apparently concerned that his efforts to end the mistreatment would be unsuccessful – that Whole Foods make available a supervisor who was aware of his status and able to ensure that he could shop without harassment.  AA65.

3

Whole Foods failed to provide these reasonable accommodations to Brown. Instead, less than two weeks after his second meeting with Ashley, Brown was confronted by "Kahlil," a Whole Foods employee who, ironically, identified himself to Brown as a manager. AA37. After Kahlil's abusive treatment of Brown triggered a panic reaction, the ostensible supervisor summoned the police and had Brown arrested for trespassing and theft. AA19, AA38.

Whole Foods maintains that the above facts do not state a "viable" claim that it failed to provide reasonable accommodations to permit Brown to shop at its Foggy Bottom store. The Court should reject Whole Foods' assertion.

### A.     Whole Foods Applies an Improperly Stringent Pleading Standard for the Motion to Dismiss

In moving to dismiss his claims, Whole Foods holds Brown to a standard far more stringent than properly applied under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, Brown need only demonstrate "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Brown must simply plead facts that are more than "merely consistent with" Whole Foods' liability; the "plead[ed] factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

4

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.  Under the standard set forth in *Twombly*, a "court deciding a motion to dismiss must . . . assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotations and citations omitted); *see also Hunter v. District of Columbia*, No. 12-1960, 2014 U.S. Dist. LEXIS 114075, at *9-10 (D.D.C. Aug. 18, 2014) (denying motion to dismiss ADA and Rehabilitation Act claims).

In addition, "dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008).  A district court should consider not only a *pro se* plaintiff's original complaint, but should read all of his filings together before granting a defendant's motion to dismiss.  *See Lindsey v. United States*, 448 F. Supp. 2d 37, 62 (D.D.C. 2006) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).

For purposes of a claim alleging discrimination on the basis of disability, the Supreme Court has held that the pleadings need merely give a defendant "fair notice of what [his] claims are and the grounds upon which they rest."

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-15 (2002) (in complaint detailing events leading to termination, the relevant dates and ages and nationalities of persons involved provided "fair notice" to defendant).

**B.    Brown Has Provided Sufficient Notice of His Claims to Whole Foods**

In arguing for dismissal of his Title III claims, Whole Foods ignores the copious factual material in Brown's various filings.  Whole Foods mistakenly alleges that Brown "still has not identified what policy Whole Foods should modify, how it should be modified, or how the modification would be necessary to accommodate his disability."  Whole Foods Br. at 11.  As detailed below, Brown's allegations sufficiently address these issues and establish a viable claim.

To state a claim under Title III of the ADA, 42 U.S.C. § 12182(a), a plaintiff must allege:  (1) that he is disabled within the meaning of the ADA; (2) that the defendant owns, leases or operates a place of public accommodation; and (3) that the defendant discriminated against him by denying him a full and equal opportunity to enjoy the services the defendant provides.  AA10.  Only the third element is at issue in this appeal.  AA11.  Brown alleges that Whole Foods discriminated against him by failing to "make reasonable modifications in [its] policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii); *see* AA11.

To support his ADA claim, Brown filed a series of documents containing factual support for his allegations of discrimination:  a February 8, 2013, complaint, AA17-AA19; a June 17, 2013, Response to Defendant's Motion to Dismiss, AA31-AA41; a June 17, 2013, Amended Complaint, AA42-AA48; and an August 12, 2013, Response in Opposition to Whole Foods Market Group Inc.'s Motion to Dismiss Amended Complaint, AA64-AA73.  Brown's filings detail the symptoms of his cognitive disability, *Amicus* Br. at 3-4, and an approximately six-month period of harassment by Whole Foods' employees, apparently in response to these symptoms.  *Id.* at 4-9.[1]

Notably, Whole Foods does not contest the sufficiency of Brown's assertions of sustained harassment by its employees.  Instead, it asserts that "Brown's pleadings, read together and construed liberally, fail to state a reasonable accommodation claim because Brown never alleged that Whole Foods denied his sole accommodation request – namely to 'receive help from a manager in order to prevent future problems.'"  Whole Foods Br. at 10.  This assertion, which certainly does not construe Brown's claims "liberally," ignores the copious factual material in Brown's filings demonstrating that he sought a reasonable modification of the

---

[1] The factual recitation in the *amicus*'s opening brief is derived from the various documents filed by Brown and listed above.  *Amicus* Br. 3-11.

7

"policies, practices, or procedures" that resulted in his repeated harassment and, eventually, his arrest.

Brown made two, specific requests for reasonable modification, neither of which were granted by Whole Foods.

### 1.    Brown Requested that Whole Foods Employees Cease Their Practice of Harassment

Brown's filings detail his meetings with Ashley, a Whole Foods supervisor, where he informed her about his disability, detailed how the harassment exacerbated his symptoms and informed her how Whole Foods could accommodate his needs:

> Plaintiff asked that management be aware that Plaintiff was susceptible to confusion in complicated situations involving the type of harassment that Plaintiff already experienced at Whole Foods.

AA18 (February 8, 2013, Complaint).

> In an effort to assert his rights to enjoy public accommodations, Brown had a meeting with Ashley, the supervisor of the employees who had denied him services. . . .   Brown informed Ashley about his disability, stating that the mistreatment had made the symptoms of his cognitive disability worse.

AA64-AA65 (August 12, 2013, Response in Opposition to Motion to Dismiss).

> Brown shared how his capacity to process information diminishes under stressful and complicated situations. Brown told Ashley that "decision making and organization" present challenges.

> Ashley and Brown met and "discussed, for a second time,
> Brown's concerns including the particulars of Brown's
> cognitive disability.  Brown suggested that perhaps his
> mannerisms, indecision, and disorganization contributed
> to the harassment he experienced.  *Brown asked that
> management understand his disability and discourage
> employees from profiling and targeting him*."

AA35 (June 17, 2013, Response to Motion to Dismiss, ¶¶ 14, 15) (emphasis

added).

  Read liberally and affording *pro se* plaintiff Brown all reasonable inferences,

his filings firmly establish that Brown made a request for modifications of Whole

Foods' "policies, practices or procedures."  He detailed how the mistreatment by

Whole Foods' employees had exacerbated the symptoms of his cognitive disability

and asked Whole Foods take steps to stop such harassment from occurring,

including taking steps to "understand his disability and discourage employees from

profiling and targeting him."  *Id.*  These details certainly serve to put Whole Foods

on notice of Brown's legal claims and factual allegations.  That his complaint does

not provide further detail on how Whole Foods should accomplish this task is of no

import at this stage of the proceedings.  *Swierkiewicz*, 534 U.S. at 514-15 (there is

no "heightened pleading standard" for discrimination claims).

  Further, Whole Foods' erroneously asserts that "Brown does not and cannot

allege that Whole Foods had a 'policy' of harassing him, so his complaints about

harassment cannot be construed as a request for modification."  Whole Foods Br.

9

at 11.  As Title III explicitly provides, however, a request for reasonable modification can also relate to "practices[] or procedures."  42 U.S.C. § 12182(b)(2)(A)(ii).  No requirement exists that these actions be express or intentional.  "It is undisputed that a plaintiff need not show intentional discrimination in order to make out a violation of the ADA."  *Lentini v. Cal. Ctr. for the Arts,* 370 F.3d 837, 846 (9th Cir. 2004).  In addition, copious evidence of repeated, organized harassment in the record supports the inference that Whole Foods' employees purposefully engaged in such conduct to discourage Brown from continuing to shop in its store.  *See, e.g.,* AA18 (alleging that Whole Foods' "employee stated, 'If I were you, I would run before the Police arrive . . . and never return to Whole Foods.'"); AA38, ¶ 22 (alleging that "Khalil spoke to [the police] in hushed tones, 'We don't want this guy in our store.'").

The record also establishes Brown's explicit requests that Whole Foods modify its treatment of him.  Certainly, Brown's recitation to the Whole Foods supervisor of a series of incidents over a six-month period represents a concerted attempt by Brown to explain his behavior and detail how the practice of harassment by Whole Foods' employees contributed to his distinctive conduct.  Brown's two meetings with Ashley, discussing how the harassment affected his behavior, can reasonably be viewed as a request for Whole Foods to ensure that its employees desist from engaging in such behavior.  Whole Foods refusal to

10

accommodate such a request, if established, would constitute a violation of Title III of the ADA.

These allegations are sufficient to enable Brown to receive discovery relating to this claim. *Swierkiewicz*, 534 U.S. at 512-13 ("notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues"). Indeed, Brown's filings indicate the existence of record evidence of his meetings with the supervisor. *See* AA35 ("Brown observed Ashley taking notes and texting, allegedly, to her supervisor about her meeting with Brown."); AA36 ("Ashley took notes [at their second meeting] and promised that WholeFoods would take the matter seriously, stating that company policy required that Ashley document their conversations and complete the required paperwork.").

### 2. Brown Requested Access to a Whole Foods Manager in the Event of Future Problems

As Whole Foods has acknowledged, Brown's second express request for accommodation was for the store to provide him with the opportunity to speak with a manager if he encountered future problems with store employees. Whole Foods Br. at 11-12. Yet, contrary to the clear assertion in Brown's filings, Whole Foods maintains that Brown failed to avail himself of such an opportunity.

Again, Whole Foods' formulation of his claim is contradicted by Brown's filings:

11

> Plaintiff asked for an accommodation that would allow
> Plaintiff to receive help from a manager to prevent future
> problems.

AA18 (February 8, 2013, Complaint).

> After taking notes detailing Brown's disability, Ashley
> assured Brown that WholeFoods would accommodate
> him by allowing him to request a manager if future
> problems arose.

AA65 (August 12, 2013, Response in Opposition to Motion to Dismiss).

> [Brown] usually did not require assistance but wanted to
> know that WholeFoods would accommodate him by
> allowing him to speak with management if a problem
> arose in the future.

AA35 (June 17, 2013, Response to Motion to Dismiss, ¶ 14).

The filings establish that Brown explicitly requested that, should the need

arise, Whole Foods would provide him with access to a manager who was prepared

to address his particular issues. Instead, as depicted by Brown's allegations

relating to his February 4, 2012, arrest, the individual who identified himself as a

manager to Brown actually precipitated Brown's arrest for theft and trespassing.

*Amicus* Br. at 9. This incident would not have occurred had Whole Foods

complied with Brown's previous requests to educate its supervisory staff regarding

his unique needs.

Whole Foods deems Brown's factual assertions insufficient: "Brown does

not allege that he asked to speak with a particular manager or that only some

12

managers were 'capable of addressing his needs.'" Whole Foods Br. at 12. Yet,

Brown explicitly states that when confronted by Khalil prior to his arrest, "Brown

asked for a manager, but Kahlil announced, 'I am the manager.'" AA37. Brown

could not more clearly articulate a claim that Whole Foods failed to accommodate

his request for meaningful managerial assistance. Brown's filings provide Whole

Foods with "fair notice" of his claim; such notice is all that is required at this stage

of the proceedings. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002).

### 3.     Whole Foods' Failure to Implement a Policy to Address Brown's Disability Violated the ADA

Finally, Whole Foods maintains that "[n]othing in Title III of the ADA

indicates that Congress intended to create a cause of action based solely on the

failure of a covered entity, in the abstract, to develop and implement a program

instructing employees how to deal effectively with individuals with disabilities."

Whole Foods Br. at 12. This assertion is factually and legally incorrect.

There is nothing "abstract" about this matter; Brown has presented specific

examples of active discrimination against him by Whole Foods employees. To

some extent, *every* public accommodation case concerns a covered entity

effectuating a policy to provide service to individuals with disabilities. *See, e.g.,*

*Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) ("failure to train can

constitute a violation of the ADA"). Whole Foods cites *Stan v. Wal-Mart Stores,*

*Inc.*, 111 F. Supp. 2d 119, 124-26 (N.D.N.Y. 2000), to support its argument. Yet,

as part of its rationale for denying plaintiff's claim on summary judgment, the court in *Stan* specifically noted that "Defendants undertook remedial action by talking to the employees involved and conducting training." *Id.* at 126. Whole Foods provides no explanation why it could not have undertaken similar remedial action in response to Brown's requests.

## II.   BROWN'S NOTICE TO THE DISTRICT OF COLUMBIA SATISFIES THE PURPOSE OF THE CRA's NOTICE PROVISION

Brown also contends that Whole Foods discriminated against him in violation of Title II of the CRA. 42 U.S.C. § 2000a(a) ("all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion or national origin"). AA12.

### A.   The CRA Does Not Require Brown to Comply With the District of Columbia's Requirements for Filing a Discrimination Complaint

Whole Foods does not challenge the factual sufficiency of Brown's claim under Title II of the CRA. Instead, it argues that the district court correctly dismissed Brown's claim because he failed to comply with the statute's requirement that he provide notice to the District of Columbia 30 days before filing his federal claim. *See* 42 U.S.C. § 2000a-3(c). As *amicus* established in its opening brief, *Amicus* Br. at 31, Brown provided notice to the appropriate office

14

after filing his complaint.[2]  Because § 2000a-3(c)'s notice requirement is a claim-processing provision without jurisdictional effect, *Amicus* Br. at 32-49, Brown's notice was sufficient and should not bar further action in this matter.

Whole Foods does not dispute that Brown provided notice of his claim to the executive director of the District of Columbia Office of Human Rights ("DCOHR") on July 9, 2013.  Instead, it argues that Brown's email to DCOHR did not satisfy the "requirements for filing complaints of discrimination."  Whole Foods Br. at 17.  This contention misreads Brown's obligations under the section's plain language:

> [N]o civil action may be brought under subsection (a) . . . before the expiration of thirty days after *written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person*, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

42 U.S.C. § 2000a-3(c) (emphasis added).  Whole Foods' brief details the District of Columbia's "well developed . . . protocol for bringing complaints of discrimination before the DCOHR."  Whole Foods Br. at 15-16.  While *amicus*

---

[2] Brown also provided notice to the District of Columbia Office of Disability Rights *before* filing his claim.  *Amicus* Br. at 15-16, 50-52.  If this Court rejects the argument that Brown has satisfied the notice requirement by contacting DCOHR, he should be afforded leave to amend his complaint to establish compliance via his notice to the Office of Disability Rights, pursuant to 28 U.S.C. § 1653's liberal amendment rule for jurisdictional allegations (if the notice requirement is even jurisdictional).

takes no position on the procedure for filing a complaint in the District of

Columbia, it is clear that § 2000a-3(c) does not require that a plaintiff comply with

such procedures.  "Section 2000a-3(c) only requires that notice be given to the

'appropriate authority,' and giving notice to state authorities is not the same thing

as filing a state law complaint." *Daigle v. Friendly Ice Cream Corp.*, 957 F. Supp.

8, 11 (D.N.H. 1997); *see also Hill v. Shell Oil Co.*, 78 F. Supp. 2d 764, 774 n.9

(E.D. Ill. 1999) (describing *Daigle's* "cogent and succinct analysis" of the same

principle).  Indeed, allowing the state to define what would constitute sufficient

notice would defeat the entire purpose of the CRA:  providing individuals alleging

discrimination with access to federal court regardless of state requirements.  *See*

*Hill*, 78 F. Supp. 2d at 774-75.

Whole Foods' lone citation on this question, *Harris v. Ericson*, 457 F.2d 765

(10th Cir. 1972), does not support its position that Brown's notice to DCOHR was

inadequate.  *Harris* states merely that the "state must be given the *opportunity* to

invoke its remedies" (*id.* at 767 (emphasis in original)) and has never been read to

require actual compliance with state filing requirements.  *See Hill*, 78 F. Supp. 2d

at 771 (citing *Harris*).  To the contrary, the "state notice requirement is modest.

16

All that is required is 'written notice' of the 'alleged acts or practices' constituting the discrimination." *Hill*, 78 F. Supp. 2d at 771 (internal citation omitted).[3]

### B.    Recent Supreme Court Precedent Establishes that § 2000a-3(c) is Not Jurisdictional

As *amicus* detailed in its opening brief, the district court's decision that § 2000a-3(c)'s notice provision is a "mandatory jurisdictional prerequisite" runs counter to recent, controlling Supreme Court precedent. *Amicus* Br. at 32-39. The "bright-line" test established and refined by the line of cases commencing with *Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006), demonstrates that the notice provision is a non-jurisdictional claim-processing provision. *See, e.g.*, *Henderson v. Shinseki*, 131 S. Ct. 1197, 1202-03 (2011) (120-day deadline for filing a notice of appeal with Veterans Court was a "quintessential claim-processing" rule).

*Amicus* discussed a number of factors that demonstrate the non-jurisdictional nature of § 2000a-3(c). These include the provision's silence on the question of jurisdiction, its placement in a section that does not address jurisdiction at all (in comparison to § 2000a-6, which does) and, most importantly, long-standing

---

[3] *Amicus* does not contest Whole Foods' claim that Brown's notice was untimely under the statute of limitations for filing a complaint in the District. Whole Foods Br. at 19-23. As *amicus* detailed in its opening brief, *Amicus* Br. at 40-42, the applicable state limitations period is irrelevant for purposes of providing appropriate notice pursuant to § 2000a-3(c).

17

congressional solicitude for the CRA's special purpose in providing access to federal court for individuals subject to discrimination. *Amicus* Br. at 37-39.

In response, Whole Foods references § 2000a-6, the *actual* jurisdictional provision in Title II of the CRA. Whole Foods suggests that Congress could have written § 2000a-6 differently to indicate that compliance with § 2000a-3(c)'s notice provision was not required for purposes of jurisdiction. Whole Foods provides no support for this assertion that a provision will be assumed to be jurisdictional unless Congress affirmatively stated it was *not* jurisdictional. Indeed, the exact opposite assumption prevails: the Supreme Court has held that a jurisdictional provision's silence on the question of notice militates *against* providing jurisdictional effect to the notice provision. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-94 (1982) ("The provision granting district courts jurisdiction under Title VII . . . does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC. It contains no reference to the timely-filing requirement.").

Whole Foods' argument evidences some confusion about the nature of *amicus*'s argument. In establishing that § 2000a-3(c) is a claim-processing provision, *amicus* does not assert that an individual may simply ignore the notice requirement. Instead, as the Supreme Court and this Court have both recognized, "[c]laim-processing rules 'typically permit [tribunals] to toll the limitations period

18

in light of special equitable considerations.'" *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 524 (D.C. Cir. 2010) (quoting *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008)). This is just such a situation. *Amicus* Br. at 44-49 (detailing equitable basis for sufficiency of Brown's notice).

Whole Foods also cites to general CRA legislative history to maintain that § 2000a-3(c) should be treated as jurisdictional. Whole Foods Br. at 26-27. Whole Foods is certainly correct that Congress intended to give individuals the option to seek remedies in states that elect to provide a forum for adjudicating claims of discrimination. But this bears no weight on the question of the jurisdictional effect of the notice provision. And Whole Foods fails to mention that the legislative history relating directly to § 2000a-3(c) repeatedly refers to the provision as a "condition precedent" and fails to indicate any jurisdictional effect. *Amicus* Br. at 38 (quoting S. Rep. No. 88-782, at 1, 6 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2355, 2356, 2360). Nothing in the legislative history cited by Whole Foods provides a "'clear' indication" that Congress intended to establish the provision as jurisdictional. *See Henderson*, 131 S. Ct. at 1203 (quoting *Arbaugh,* 546 U.S. at 515-16). According to the Supreme Court, this absence of congressional intent on the subject demonstrates the non-jurisdictional nature of the provision. *See, e.g.*, *Henderson*, 131 S. Ct. at 1203.

19

Finally, Whole Foods cites to the long line of appellate and district court cases opining that § 2000a-3(c) is jurisdictional.  Whole Foods Br. at 27-28.  As *amicus* detailed in his opening brief, none of these cases – before determining the jurisdictional nature of a statute – conducted the type of searching analysis mandated by the Supreme Court.  *Amicus* Br. at 39-40 (citing the Supreme Court's refusal in *Arbaugh*, 546 U.S. at 511, to rely on "less than meticulous" precedent).  In fact, Whole Foods cites to a 2014 case holding that § 2000a-3(c) is jurisdictional.  Whole Foods Br. at 28 (citing *May v. California Hotel & Casino, Inc.*, No. 2:13-cv-66, 2014 WL 1494231 (D. Nev. Apr. 14, 2014)).  However, like all of the precedent cited by the opinion in that case, *May* conducts no analysis on this subject, relying merely on precedent rendered irrelevant by the *Arbaugh* line of cases.  *See Amicus* Br. at 39-40.

### C.     As a Claim-Processing Provision, § 2000a-3(c)'s Notice Requirement Should Be Tolled

Responding to *amicus*'s assertion that § 2000a-3(c) should be subject to equitable tolling – and that Brown's post-filing notice should suffice – Whole Foods cites to *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989).  Whole Foods Br. at 28-30.  Whole Foods' attempt to equate § 2000a-3(c) to a notice provision for citizen suits in an environmental statute is unavailing.

Most generally, *Hallstrom* concerns a 60-day notice requirement for individual suits pursuant to 42 U.S.C. § 6972(b)(1) of the Resource Conservation

and Recovery Act of 1976 ("RCRA").  Without diminishing the importance of the

provision's regulation of waste disposal, there is no indication that Congress

afforded RCRA the same "broad[] coverage" bestowed upon the CRA.  *Daniel v.

Paul,* 395 U.S. 298, 307-08 (1969); s*ee also United States v. Med. Soc'y of S.C.*,

298 F. Supp. 145, 151-52 (D.S.C. 1969) (courts traditionally apply a "liberal

construction" to carry out congressional anti-discrimination purposes).

     In *Hallstrom*, the Supreme Court explicitly recognized the functional

difference between RCRA and anti-discrimination provisions.  Rejecting

petitioner's reliance on precedent relating to the CRA, the Supreme Court found

that "[w]hile the initial charge in a Title VII [of the CRA] proceeding is normally

filed by an aggrieved individual . . . citizen suits under RCRA are like any other

lawsuit, generally filed by trained lawyers who are presumed to be aware of

statutory requirements."  *Hallstrom*, 493 U.S. at 28 (citing *Zipes v. Trans World

Airlines, Inc.*, 455 U.S. 385, 397 (1982)).  Of course, this appeal presents just such

a case of a litigant filing on his own behalf.  The type of technical reading

advocated by Whole Foods is "'particularly inappropriate in a statutory scheme in

which laymen, unassisted by trained lawyers, initiate the process.'"  *Zipes*, 455

U.S. at 397 (quoting *Love v. Pullman Co*., 404 U.S. 522, 527 (1972)).

     In requiring strict compliance with the notice provision, the Court in

*Hallstrom* also examined RCRA's legislative history.  It determined that Congress

imposed the requirement to "allow[] Government agencies to take responsibility

for enforcing environmental regulations, thus obviating the need for citizen

suits . . . [and to] give[] the alleged violator 'an opportunity to bring itself into

complete compliance with the Act and thus likewise render unnecessary a citizen

suit.'" *Hallstrom*, 496 U.S. at 29 (quoting *Gwaltney of Smithfield, Inc. v.

Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987)).  Of course, neither of these

considerations is relevant to a matter involving § 2000a-3(a), which specifically

contemplates suits brought by the "person aggrieved."  *See also Daigle v. Friendly

Ice Cream Corp.*, 957 F. Supp. 8, 10 (D.N.H. 1997) (analogizing goals of Title II

of the CRA to "'the crucial role played by the private litigant in [Title VII's]

statutory scheme'") (quoting *Aros v. McDonnell Douglas Corp.,* 348 F. Supp. 661,

663 (C.D. Cal. 1972)).

Finally, the Supreme Court stressed that its decision would not foreclose

plaintiff from refiling the matter once it had complied with the notice provision.

*Hallstrom,* 493 U.S. at 32.  Refusal to provide equitable modification in this matter

would, of course, preclude Brown from pursuing his otherwise well-pleaded

claims.  *See* AA14-AA16.

*Hallstrom* is Whole Foods only counterargument on the equitable tolling

issue.  Its holding bears no relevance to this matter and without its support, Whole

Foods' arguments against equitable modification dissolve.

**D.    Brown's Provision of Post-Filing Notice to the District of Columbia Satisfies the Statute**

Finally, Whole Foods asserts that "Brown has not presented any persuasive reason why the CRA's prefiling notice requirement should be waived or tolled in his case."  Whole Foods Br. at 30.  To the contrary, *amicus* has detailed how Brown's post-filing notice to DCOHR both satisfied the section's purposes, *Amicus* Br. at 44-45, and caused no prejudice to either party.  *Amicus* Br. at 45-49.  Indeed, in both of the cases cited by *amicus* for the former proposition, the district courts ratified post-filing notice without reservation.  *See Burkhart v. Asean Shopping Ctr., Inc.*, 55 F. Supp. 2d 1013, 1019 (D. Ariz. 1999); *Emery v. Pennies*, No. CV54007277, 2005 Conn. Super. LEXIS 3157, at *21 (Conn. Super. Ct. Nov. 2, 2005).

On the question of prejudice to the parties, Whole Foods' response is that the mandatory mediation required for discrimination claims in the District of Columbia is "a valuable tool for the resolution of dispute."  Whole Foods Br. at 32.  While this may be true, it in no way changes the fact that the District of Columbia Code provides no impediment to an individual who wishes to seek relief for discrimination in federal court, even where an individual has previously filed a complaint with DCOHR.  *See Amicus* Br. at 45-49.

## <u>CONCLUSION</u>

The district court's decision dismissing Brown's ADA and CRA claims should be reversed.

Dated: August 28, 2014                 Respectfully submitted,

                                           /s/ Anthony F. Shelley   
                                        Anthony F. Shelley
                                        Andrew D. Herman
                                        Miller & Chevalier Chartered
                                        655 Fifteenth St., NW, Suite 900
                                        Washington, DC 20005
                                        Telephone: (202) 626-5924
                                        Facsimile: (202) 626-5801
                                        Email:  ashelley@milchev.com
                                                aherman@milchev.com

                                        *Court-Appointed Amicus Curiae*

24

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

<u>XX</u> this brief contains 5,290 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

___ this brief uses a monospaced typeface and contains [*state the number of lines*] of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because:

<u>XX</u> this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font in Times New Roman, or

___ this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

_____          _____
         August 28, 2014                            /s/ Anthony F. Shelley
              Date                                  Anthony F. Shelley

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2014, I electronically filed the foregoing

**REPLY BRIEF OF COURT-APPOINTED *AMICUS CURIAE* ON BEHALF**

**OF APPELLANT** with the Clerk of Court using the CM/ECF System, which will

send notice of such filing to the following registered CM/ECF users:

> Christopher Humber
> Ogletree, Deakins, Nash, Smoak & Stewart, PC
> 1909 K Street, NW, Suite 1000
> Washington, DC 20006
> Email: christopher.humber@ogletreedeakins.com

I further certify that on August 28, 2014 I have mailed a true and correct

copy of the foregoing **REPLY BRIEF OF COURT-APPOINTED *AMICUS***

***CURIAE* ON BEHALF OF APPELLANT** by First-Class Mail, postage prepaid,

to the following non-CM/ECF participant, addressed as follows:

> Randy Brown
> 1417 Ames Place, NE
> Washington, DC 20002
> Email: zeugma7@verizon.net

I also certify that, on August 28, 2014, I will dispatch, within two business

days, by hand-delivery, the requisite EIGHT (8) copies of the **REPLY BRIEF OF**

**COURT-APPOINTED *AMICUS CURIAE*, ON BEHALF OF APPELLANT** to

the Clerk of the United States Court of Appeals for the D.C. Circuit.

/s/ Anthony F. Shelley
Anthony F. Shelley
